# *Bharucha*

# *v.*

# *City of Greenwood Village*

---

Tonya H. Davidson

December 02, 2025

---

AB Litigation SERVICES

216 16th Street, Suite 600
Denver, CO 80202
303-296-0017

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-02135-SKC-STV

VIDEOCONFERENCE DEPOSITION OF TONYA H. DAVIDSON

December 2, 2025

Plaintiffs,

NEZA BHARUCHA; ZARRIN HOSPITALITY GROUP, INC.; and COMMUNITY ECONOMIC DEFENSE PROJECT,

v.

Defendants,

CITY OF GREENWOOD VILLAGE; CITY ATTORNEY TONYA HAAS DAVIDSON, in her individual capacity; and CITY MANAGER JOHN JACKSON, in his individual capacity.



REMOTE APPEARANCES:
KILLMER LANE LLP
By David A. Lane, Esq.
Madison Lips-Schaefer, Esq.
303-571-1000
1543 Champa Street, Suite 400
Denver, Colorado 80202
Appearing for Plaintiffs.
LASATER & MARTIN PC
By Peter H. Doherty, Esq.
303-730-3900
5251 DTC Parkway, Suite 800
Greenwood Village, Colorado 80111
Appearing for Defendants.

Also Present: Neza Bharucha,
Shannon Chambers-Nelson.



Pursuant to Notice and the Federal Rules of Civil Procedure, the deposition of TONYA H. DAVIDSON, called by Plaintiffs, was taken on Tuesday, December 2, 2025, commencing at 8:57 a.m., via Zoom videoconference, before Marcus K. Boyer, Shorthand Reporter and Notary Public for the State of Colorado.

I N D E X


| EXAMINATION BY | | PAGE |
|---|---|---|
| Mr. Lane | | 4 |

| EXHIBITS | | PAGE |
|---|---|---|
| 1 | Letter from Tonya Davidson | 8 |
| 2 | Section 16-17-90 | 29 |
| 3 | Uniform Building Code Definitions | 42 |
| 4 | Requirements for Group R Occupancies | 44 |
| 5 | Jim Gassman Report | 45 |
| 6 | Motel 6 Certificate of Occupancy | 52 |
| 7 | Staff Report | 55 |
| 8 | Nonconforming use clause | 61 |
| 9 | Police Department Custody Report | 70 |
| 10 | Order Re: Appeal from Municipal Court Order | 78 |
| 11 | City's Response to Motion to Vacate | 101 |




P R O C E E D I N G S

TONYA H. DAVIDSON,

being first duly sworn in the above cause, was examined and testified as follows:

EXAMINATION

BY MR. LANE:

**Q Good morning, Ms. Davidson.**

A Good morning.

**Q Have you ever had your deposition taken before?**

A I have.

**Q Okay. And you are an attorney; that is correct?**

A That's correct.

**Q So you know the rules of the road, but I'm going to put them on the record anyway because that's what I do. You understand every word you're saying is being taken down by a court reporter?**

A Yes.

**Q You understand if this case goes to trial, the words you're speaking today may be used at trial in front of a jury or in front of the court?**

A Yes.

**Q Okay. And you understand that the only**

use statute, wouldn't that be a nonconforming use?
A The interesting thing about that would be nonconforming uses have to be continuous, so I'm not sure an exception is a continuous use.
Q Well, but my -- my hypothetical --
A It's just a legal argument.
Q My hypothetical is -- yeah, I mean, in a big motel like that, she was constantly -- every two weeks, somebody new would come in and need emergency shelter because of a crisis, a family, you know. I mean, that would be a nonconforming use, wouldn't it?
I mean, nonconforming uses can expire under the terms of your statute if not used, but let's say she was continually using it, then she would still be allowed to under the nonconforming use statute, wouldn't she?
A Hypothetically, yes.
Q Okay.
A If it was legal to begin with.
Q Right. If she was doing exactly what you guys, you know, thought she should be doing when the statute was enforced, right?
A Right.
Q Then -- okay. All right. So I want to



ask you -- I'm going to shift gears now and talk to you about a new subject and I'll bet you can't wait to see what it is.
(Exhibit 9 was marked.)
Q Can you see Exhibit 9?
A Yes.
Q This is the Greenwood Village Police Department Custody Report; is that correct?
A Yes.
Q And it was authored by Detective Fanta, correct? Right down here.
A Yes, yes. Well, this is actually -- yes.
Q Oh. This is --
A Yes, yes, it's Fanta, yes.
Q Well, Ewan Skouse and Tom Fanta apparently -- Fanta wrote it, Skouse approved it, right?
A Correct.
Q Okay. It's a criminal charge against Neza, right -- or --
A No.
Q -- Neza and -- well, yeah, it is.
A Well, it says criminal charge because we only have one form in the PD because they don't typically write zoning violations. So it's



actually -- the Statutes 16-17-90 and 16-1-80, those are civil, but they don't have a civil field. So this just auto-populates. I mean, that's their form.
Q Well, their form -- this is what was -- the form given to Neza, right?
A It was, yes.
Q And it says criminal charge on it, right?
A It does say that. It doesn't make it so.
Q So you're saying what appears on paper doesn't always make it so; is that correct? This is a trick question, Ms. Davidson. Be careful how you answer.
A Just because it says it, doesn't make it so.
Q Gotcha. All right.
A That one got me.
Q Gotcha bad. Okay. And not only does it say criminal charge, but there's a box on this for "F," which would be a felony charge, right?
A I assume so.
Q And "M" would be a misdemeanor, right?
A Yeah.
Q It's checked misdemeanor, isn't it?
A I'm -- I'm going to -- I honestly



don't -- I'm not familiar with this form, so I'm -- I'm going along with you, but I don't know what "O" stands for then.
Q "Other," I think.
A Yeah.
Q But I couldn't swear to that.
A Yeah.
Q But I know that "F" and "M" is felony misdemeanor. I've been a criminal --
A Yeah, it would -- it would seem that "O" -- "O" -- if -- if -- following that, it would seem like "O" would have been a better choice than -- than "M."
Q Okay. She got a summons, didn't she?
A She did.
Q And the summons also has -- has it listed as a criminal charge, right?
A Yeah, it's -- it's just what the form says.
Q So do you know if Fanta or any officer or any official from Greenwood Village ever -- ever bothered to tell her, "By the way, this is not a criminal charge you're facing"?
A I do not know the answer to that question.

Q If I were to tell you nobody ever said it's not a criminal charge, would you have any reason to dispute that?
A No.
Q And you understand she's not a lawyer, right?
A Right.
Q And when someone is given a document from a police officer saying you are now facing criminal charges, they can reasonably assume that they are now facing criminal charges, correct?
A That's fair.
Q And when you're facing criminal charges, that can lead to some emotional distress. Can you imagine that?
A It depends on the person. Some people, it doesn't bother a bit.
Q I'm asking about a reasonable person.
A A reasonable person -- a -- a reasonable person with a conscience and -- I mean, I can see someone who's never ever been -- I've had people come into traffic court, when I used to prosecute, that never had a traffic ticket and they were extremely upset and emotionally distraught because it was just a -- a terrible thing, so --



Q Right.
A Yeah.
Q So Neza is -- have you ever interacted with her?
A Very little.
Q She seems like a reasonable person, doesn't she?
A I can't answer that.
Q Well, you know she's a licensed physician?
A Okay.
Q Do you dispute the fact that simply getting criminal charges filed against her led to emotional upset?
A That's her reaction. I can't say if it's common to react that way or not. I think it all depends on the person.
Q Right. And if I told you this was massively upsetting to her and threatened her license to practice medicine, would -- would you have any reason to dispute that?
A Yeah, I don't know how a zoning ordinance violation would threaten her license to practice medicine.
Q It's a criminal charge. You don't know



how a zoning violation ends up in a criminal charge either, do you?
A It -- because it says criminal charge on the form. Maybe if she had consulted with an attorney, they could have told her, "This is not going to impact your medical license."
Q Right. And that would cost her some money then, wouldn't it? Going to talk to an attorney -- attorneys generally don't work for free, right?
A I don't know. I give people advice all the time. I shouldn't -- she could've called me and I would have told her it was --
Q Or you could have called her and told her, couldn't you?
A Yeah, I could have.
Q And, in fact --
A I've never done that before.
Q -- you were involved in this -- in this case, weren't you?
A Not really. Towards the end, yes.
Q "Not really" or "yes," which is the answer?
A "Not really."
Q Okay. Well, how did this case come to



your attention?
A Long after the subpoenas had been issued and probably at the time that the offense report -- or the charges were being determined and I'm the one that tacked on the zoning violation for conducting a use that wasn't allowed in addition to the 29-day stay ordinance.
Q So -- or what -- what I'm hearing you say is that Neza was never actually being criminally prosecuted, correct?
A Correct.
Q So you would not be invoking any such thing as prosecutorial immunity, would you?
A To the extent we prosecute zoning violations in municipal court. It's still --
Q Prosecution --
A -- a prosecution. It's an ordinance violation, it's just not a criminal charge because it's our -- because our code says in Chapter 16 of the Land Development Code that violations are civil in nature.
Q Right.
A So that's why -- it was -- the only reason it wasn't criminal.
Q So you don't have prosecutorial immunity,

in other words; is that correct?
A I don't agree with that.
Q I'm prosecuting a civil case right now. Are -- are you suggesting that I have prosecutorial immunity for prosecuting a civil case?
A We're still prosecuting. We're still in municipal court. We're still bringing an ordinance violation. So I -- I don't know. That's the best I can answer to that.
Q Because this document that I'm looking at is 1,587 pages long, I don't want to introduce the entire document as an exhibit, so let's just go with the first -- the first 24 pages.
So you don't -- you believe you have prosecutorial immunity in this case for -- for what happened in court?
A I didn't prosecute it.
Q Well, a motion to quash the subpoena was filed. Do you recall that?
A Yes, my prosecutor handled that.
Q Your assistant city attorney is your prosecutor; is that right?
A That's correct.
Q And that's Ms. Chambers, correct?
A Yes.



Q And that was done under your authority, correct?
A Yes, she works for me.
Q And are you familiar with the fact that my office filed an appeal from an order mandating that documents be turned over?
A Yes.
Q And I'm sharing my screen with you right now. This is Exhibit -- what -- 10.
(Exhibit 10 was marked.)
Q This was filed on August 9th, 2023, by the court and it granted our appeal. Do you recall that?
A Yes, I recall your appeal being granted and the reasons for it.
Q Do you agree with this order? Is it a correct statement of law?
A It is because we used the tool of a criminal subpoena, which is, I think, all that's available under the municipal rules and the charge, though, was, per our code, civil in nature.
So we used a criminal subpoena for a civil in nature ordinance violation. So, technically -- so, technically, yeah. I -- I think it was the right decision --



Q Okay.
A -- which is why we dismissed it.
Q Well, you didn't dismiss it. You waited for this judge to rule against you and then you did not appeal it, correct?
A And then dismissed the case.
Q Well, because you had -- you -- well, let me put it this way. We fought the subpoena in court, didn't we?
A Yes.
Q And in fighting the subpoena in court, we said, "You don't have any authority to issue this subpoena because this is a civil case, not a criminal case," right?
A It's a civil violation, yes.
Q You fought that, didn't you?
A Yes, Shannon did, yes.
Q Well, Shannon works for you, right?
A Yes.
Q And Shannon consulted with you on this, didn't she?
A Shannon has autonomy over all things municipal court.
Q Did she not consult with you on this?
A We talked about it, but I didn't tell her



not to -- what to do.
Q Shannon presumably went to law school, right?
A She did. She told me she did.
Q And Shannon presumably is familiar with the law in Greenwood Village, correct?
A Yes.
Q And Shannon fought us in our motion to quash the subpoena, right?
A Yes.
Q And you have already said you agree with this court order that is Exhibit 10 --
A I -- I understand the court order. I understand how they came to that conclusion.
Q Well, you said you agree with it; it's a correct statement of the law, right?
A It's correct that a criminal subpoena was used in a -- what is classified by our own code as a civil in nature violation.
Q Therefore, it is a correct statement of the law --
A Meaning --
Q -- as you've already said --
A Yes.
Q -- correct?

A Yes, so we could not in jail her for it --
**Q I'm not asking for Shannon to be put in jail. I'm --**
A No --
**Q -- simply saying -- simply saying that your office fought against us when we were advancing a correct statement of the law that you agree with, correct?**
A I wouldn't characterize it that way. I would say --
**Q How would you characterize it?**
A -- we used the only tool we had available to us for subpoenas in municipal court, but because we put in our code that we don't want to be putting people in jail for zoning violations, we classify them as civil, which -- that just takes away the ability of jail.
But that word civil you latched onto -- and, really, there's kind of no arguing around that. She tried. I think she gave it a good effort, but --
**Q She tried to advance a subpoena that was unlawful and gave it a good effort? Is that what you're saying?**



A I wouldn't say it was unlawful. I would say it was the only tool she had for subpoena in municipal court.
**Q Well, she -- that wasn't a tool that she had --**
A And every other violation in the code, she could use that subpoena for and has.
**Q That was not a tool that she had because it only applies to criminal cases. This is not a criminal case, therefore that tool was not available to her, was it?**
A That's what the court said.
**Q And you agree with that, don't you?**
A I agree with the court's logic and its decision. That's as far as I'm going to go on that.
**Q Okay.**
A I'm not going to agree with your characterization of anything else.
**Q So are you saying -- when you say Shannon had autonomy -- and this is an important question. You said you talked with her about this, but she has autonomy, right?**
A I don't micromanage her in terms of, "Here's what your arguments should be. Here's how you should do this." She -- she does all of her own



appeals. She does all her own -- she does her own work.
**Q Okay.**
A That's her responsibility.
**Q Well, are you familiar with the concept of malicious prosecution?**
A Yes.
**Q Okay.**
A This was not that.
**Q Well, maybe it is, maybe it isn't. I'm not rendering an opinion. I guess a judge may, down the road, do that if we amend this complaint. There was no criminal case pending, correct?**
A Correct.
**Q Even though it said criminal case, right?**
A Yes, that's what the form says.
**Q And, presumably, Shannon Chambers saw the forms that alleged a criminal prosecution, correct? Presumably, she saw that a summons was issued, a subpoena was issued --**
A I don't know if she saw it before it was issued. I mean, it's --
**Q Not necessarily before it was issued --**
A She doesn't review -- she doesn't review -- right. Well, she doesn't review -- they



don't bring it to her, completed, and here's everything every time, so I don't know if she did or not.
**Q The point I'm making is, at some point, before she filed her opposition to our motion to quash, she had likely looked at the paperwork and noted that it said criminal, right?**
A I'm sure she probably did.
**Q And she should know that it is not a criminal case, correct?**
A I can't say what she should or shouldn't know.
**Q Well, you're her boss. Aren't you concerned about what she should or should not know?**
A There's a lot of things in the code that surprise us from time to time.
**Q That's very true, I'm sure. But knowing the difference between a criminal case and a civil case shouldn't be a surprise, should it?**
A You're distinguishing between, like, a -- you know, a civil filing and a criminal filing being completely two different things. You know, you've got a CR on -- or a CV on it and this is just a municipal court case. That's all. It's not unlike any other municipal court case.

Page 85

Q Oh. It is --
A So --
Q -- because municipal court cases can be criminal or civil. So criminal --
A Well --
Q -- municipal court cases are radically different than civil cases, are they not?
A No.
Q Okay.
A Not at all.
Q Having been a criminal defense attorney for almost 46 years, I -- I'm just going to have to say you and I disagree on that. I think criminal rights of defendants are radically different than civil rights of defendants, but, in any event, we'll move on.
So what we have here is a civil case in the guise of a criminal case where Shannon Chambers is fighting a motion to quash because we're arguing she has no authority to do this because it's a civil case and the subpoena only applies in criminal cases. She's fighting that and she loses ultimately, correct?
A Yes.
Q Now, are you familiar with the United

Page 86

States Supreme Court's holdings regarding prosecutorial immunity?
And by prosecutorial immunity, I'm talking about prosecutors in criminal cases prosecuting criminal cases. Are you familiar with the US Supreme Court's case law on prosecutorial immunity in that context?
A No.
Q Okay. Well, do you know whether you or Shannon Chambers would or would not enjoy prosecutorial immunity if we amend this complaint and add count of malicious prosecution for each of you to this complaint?
Do you know or not know whether or not you would expect to get prosecutorial immunity?
A I would expect to.
Q Even though it was not a criminal case?
A Well, there was nothing malicious done in this case regardless.
Q That's different than getting immunity. Maybe on the facts, you'll win, but that's --
A I think that's important. I think that's pretty important.
Q Winning is very important. I don't disagree with you, but I'm saying prosecutors can --

Page 87

prosecutors can suborn perjury and be immune, prosecutors can put on false evidence and be immune, prosecutors can hide exculpatory evidence and be immune under prosecutorial immunity, just like judges. Once charges get filed, they essentially have the exact same immunity that judges have and there's really nothing you can do about it, but that's for prosecutors prosecuting criminal cases.
You guys weren't prosecuting a criminal case, were you?
A We weren't doing anything malicious, that's for sure.
Q That's, again, going to the merits. I'm not dealing with the merits. I'm simply saying you were not prosecuting a criminal case, were you?
A We were prosecuting a municipal court violation -- a municipal code violation. That is --
Q It's not a criminal --
A -- characterized as -- it's characterized as civil so that there's no right to a jury trial because there's no risk of jail time.
Q It's categorized as civil because it's not criminal, correct?
A I just explained why it's categorized as civil.

Page 88

Q Is it criminal?
A It's not subject to jail, which triggers jury trial. We had a defendant that had the longest jury trial, I think in the history of Greenwood Village, over a really simple zoning --
Q Right.
A -- violation --
Q But that's not my question.
A -- and that's why the code was changed.
Q My question is, is it -- were you prosecuting a criminal case? That's a yes or a no.
A No.
Q Was Shannon Chambers prosecuting a criminal case, yes or no?
A No.
Q But Shannon Chambers, nevertheless, tried to invoke a criminal subpoena in a civil case, didn't she?
A She invoked a municipal court subpoena.
Q And did she do that with your approval and authority?
A I honestly don't remember.
Q Okay. Hang on one second. I want to get into calls for service at Motel 6. Are you aware of the fact that the police routinely cruise the