IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-02135-SKC-STV

NEZA BHARUCHA;
ZARRIN HOSPITALITY GROUP, INC.; and
COMMUNITY ECONOMIC DEFENSE PROJECT,

Plaintiffs,

v.

CITY OF GREENWOOD VILLAGE;
CITY ATTORNEY TONYA HAAS DAVIDSON, in her individual capacity; and
CITY MANAGER JOHN JACKSON, in his individual capacity,

Defendants.

---

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

---

Plaintiffs, by and through undersigned counsel, respectfully submit this Reply in Support of their Motion for Leave to file their Second Amended Complaint, and state in support the following:

**Certification Regarding Use of Artificial Intelligence Pursuant to Judge Crews' Standing Order for Civil Cases § C (2)**

Undersigned counsel certifies that no portion of this Reply was drafted by AI.

## I. THE PROPOSED CLAIMS AGAINST DEFENDANTS CHAMBERS AND FANTA ARE NOT TIME BARRED BECAUSE THEY RELATE BACK

Defendants first argue that Plaintiffs' proposed malicious prosecution claims against Detective Tom Fanta (formerly a defendant in this case) and Assistant City Attorney Shannon Chambers are futile because they are time barred. As Plaintiffs

have laid out in their initial Motion, Plaintiffs seek leave to bring these claims against these defendants because they learned information about the defendants' mental states to support the "malice" prong of a malicious prosecution claim in Defendant Davidson's deposition on December 2, 2025. Plaintiffs could not have known of this information prior to Defendant Davidson's deposition, and therefore could not have properly pleaded malice prior to this deposition. *See Church of Scientology In'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) (noting in the defamation context that "resolution of…actual malice inquiries typically requires discovery").

Defendants point out that Plaintiffs could have brought these claims within the two-year statute of limitations if they had been filed on or before August 29, 2025. Plaintiffs originally scheduled their first deposition of Defendant John Jackson for June 20, 2025, and planned to schedule the other defendants for their depositions in short order. On that date, however, the Parties elected to engage in efforts to settle the case. Those settlement efforts continued through August of 2025, until it became apparent that settlement was not then possible, and Plaintiffs began to resume scheduling depositions. Plaintiffs would have learned the revelations discovered in Defendant Davidson's deposition (and potentially the depositions of other defendants) prior to the statute of limitations if not for settlement efforts – and Plaintiffs should not be punished for their part in making a good-faith effort at resolution.

Plaintiffs' claims against Defendants Fanta and Chambers do relate back to original date of filing. Because Defendant Davidson is a current defendant, and

Defendant Fanta was previously a named defendant in this case for whom the sole claim against him was dismissed, Rule 15(c)(1)(B) regarding relation back of additional claims applies to them. Whether Rule 15(c)(1)(B) is satisfied "depends on the existence of a common core of operative facts uniting the original and newly asserted claims," *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (internal quotation marks omitted) (interpreting prior, but materially analogous, version of Federal Rule of Civil Procedure 15(c)). The claims clearly arise out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). Indeed, Defendants' procedural history, which Defendants use to argue that Plaintiffs somehow should have known the malicious mental state of Defendants at the time of filing, cuts against them on this point. *See* [Doc. 62] at 2-9. Because Defendant Fanta and Defendant Davidson were previously named defendants, this rule applies to them.

Defendant Chambers is also properly brought in under Rule 15(c)(1)(C)(i)-(ii) as a newly named defendant. Defendants appear to rightly concede that Defendant Chambers "received such notice of the action that [she] will not be prejudiced in defending on the merits." Fed. R. Civ. P. 15(c)(1)(C)(i). Defendants then formulaically apply the language of Rule 15(c)(1)(C)(ii) to say that there was no "mistake concerning the proper party's identity." But the "mistake" is not that Plaintiffs believed someone else was responsible for pursuing a malicious prosecution – the mistake was that Plaintiffs did not have knowledge of *any* defendant's malicious mental state. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S.

538, 549 (2010) (holding that a plaintiff's knowledge of the existence of a proper defendant but a misunderstanding of the role the defendant played in the "conduct, transaction, or occurrence" giving rise to the claim can constitute a mistake under Rule 15(c)(1)(C)(ii)). Now that this information has become apparent through Defendant Davidson's deposition, Plaintiffs seek to bring meritorious malicious prosecution claims against these three defendants, including Defendant Chambers.

## II. PLAINTIFFS HAVE PROPERLY ALLEGED THE ELEMENTS OF A FEDERAL MALICIOUS PROSECUTION CLAIM

As an initial matter on this subject, Defendants argue in their procedural history section of their Response that Defendant Davidson was not sufficiently personally involved in the malicious prosecution to allow for a claim of supervisory liability. However, the record makes clear that Defendant Davidson was personally involved in and responsible for Assistant City Attorney Shannon Chambers' decision to proceed with an unlawful prosecution of Ms. Bharucha. *See* [Doc. 57-3] at 77:21-78:3, 79:20-80:10. Under the personal involvement prong, the plaintiff must show "an affirmative link between the supervisor and the constitutional violation," which can be proven by showing that the supervisor "possessed responsibility for the continued operation of a policy." *Burke v. Regalado,* 935 F.3d 960, 997 (10th Cir. 2019) (internal citations omitted). By being fully apprised of Ms. Chambers' actions and admitting her ongoing responsibility for those actions, Defendant Davidson admits personal involvement. Defendant Davidson's acquiescence with Ms. Chambers' plan of malicious prosecution caused Ms. Bharucha's harm. *See id.* And Defendant Davidson possessed a state of mind of

deliberate indifference by disregarding a known or obvious consequence of her actions. *Id.* Thus Defendant Davidson meets each prong of the test for supervisory liability: 1) personal involvement; 2) causation; and 3) state of mind. *Id.*

Defendants also more broadly attack Plaintiffs' malicious prosecution claims as failing because Ms. Bharucha was not arrested or incarcerated, which they claim is required to constitute a "seizure" under the Fourth Amendment. While the cases Defendants cite do create this precedent, Plaintiffs argue that this Court should adopt a broader theory of seizure under the Fourth Amendment for malicious prosecution claims as left open under the U.S. Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). In that case, this issue was not directly decided, but Justice Ginsberg urged the Court in a concurrence to adopt a non-custodial concept of a "continuing seizure" to address the control exercised by the state over defendants prior to a criminal trial. *Id.* at 278. She argued that a seizure under the Fourth Amendment ought to include compelling a criminal defendant to "appear in court at the state's command," and also pointed out the harms to a defendant's employment prospects, reputational harm, and the financial and emotional distress of preparing a defense. *Id.* Ms. Bharucha was not free to ignore the City's summons to appear in court, and she certainly suffered substantial emotional distress prior to that court appearance. She feared damage to her license to practice psychiatry as a result of a criminal charge or conviction. She was undoubtedly seized in the sense described by Justice Ginsberg in *Albright*, and this Court ought to recognize that interpretation of a malicious prosecution claim.

## III. PLAINTIFFS HAVE PROPERLY ALLEGED THE ELEMENTS OF A STATE MALICIOUS PROSECUTION CLAIM AGAINST DEFENDANT FANTA

Plaintiffs' state law claim of malicious prosecution against Defendant Fanta is brought under C.R.S. § 21-31-131, the Enhancing Law Enforcement Integrity Act ("ELEIA"). This statute expressly states that the Colorado Governmental Immunity Act ("CGIA") does not apply to claims brought under this statute. C.R.S. § 21-31-131(2)(b). Defendants wrongly assume that courts must follow federal jurisprudence regarding malicious prosecution claims under the state constitution, but cite no caselaw applying that rule in the context of a malicious prosecution claim in Colorado.

Contrary to Defendants' argument that § 13-21-131 should be read against the background of federal case law interpreting 42 U.S.C. § 1983, the Act's legislative scheme makes clear that the cause of action created by section 13-21-131 was intended to be much broader than its federal counterpart, which has been severely judicially narrowed by many federal courts over the past several decades. Statutes such as Colorado's, which give vitality to state constitutional protections, provide rights independent of potentially similar rights arising from the federal constitution. "[U]nless expressly adopted by a state legislature authorizing civil actions to redress violation of state constitutions, the intent of the 1871 federal legislature that enacted Section 1983 is irrelevant to the construction of [a] state civil rights act." Gary S. Gildin, *Redressing Deprivations of Rights Secured by State Constitutions Outside the Shadow of the Supreme Court's Constitutional Remedies Jurisprudence*, 115 Penn St. L. Rev. 877, 904 (2011).

The ELEIA was passed amid state and nationwide protests, including massive demonstrations outside the state capitol in Denver, in response to the murder of George Floyd by Minneapolis police.[1] The legislation implemented "[f]ar-reaching reforms to Colorado policing."[2] "The law contained a raft of changes that reformers have long sought, but the most significant provision is one that no state ha[d] successfully passed before, and the change that cops fear most: Police officers can now be sued, they can no longer claim 'qualified immunity' from civil damages if they knowingly violate the law on the job, and they could personally be on the hook for up to $25,000 in penalties stemming from a lawsuit."[3]

The ELEIA explicitly provides that "[s]tatutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section [13-12-131]"; the "'Colorado Governmental Immunity Act' [CGIA] …does not apply to claims brought pursuant to this section"; and "[q]ualified immunity is not a defense to liability." C.R.S. § 13-21-131(2). Further, "if [a] peace officer's employer determines that the officer did not act upon a good faith and reasonable belief that the action was lawful, then the peace officer is personally liable and shall not be indemnified by the peace officer's employer for five percent of

---

[1] *See, e.g.*, Russell Berman, *The State Where Protests Have Already Forced Major Police Reform*, THE ATLANTIC (July 17, 2020), https://www.theatlantic.com/politics/archive/2020/07/police-reform-law-colorado/614269/.
[2] Saja Hindi, *Here's what Colorado's police reform bill does*, THE DENVER POST (June 13, 2020), https://www.denverpost.com/2020/06/13/colorado-police-accountability-reform-bill/.
[3] Berman, https://www.theatlantic.com/politics/archive/2020/07/police-reform-law-colorado/614269.

the judgment or settlement or twenty-five thousand dollars, whichever is less." C.R.S. § 13-21-131(4). Based on the context in which it was enacted, its stated purpose to hold peace officers accountable for their unlawful conduct and increase law enforcement integrity, its explicit elimination of federally developed qualified immunity, CGIA immunity, and other limitations on liability, and its requirement that individual peace officers are personally financially liable for their violations, legislators indisputably intended that the ELEIA be far more broad-reaching and protective of individuals' rights than federal law under section 1983.

This Court should therefore decline to find that amendment is futile under the ELEIA, and allow the issue to be fully briefed.

## IV. PLAINTIFFS' MOTION WAS FILED AS SOON AS PRACTICALLY POSSIBLE AND IS THEREFORE TIMELY

Finally, Defendants argue that this Motion to Amend will delay the case, change the scope of the case, and result in additional briefing. While some delay may be inevitable, the United States Court of Appeals for the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim. *See Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001). Plaintiffs filed their Second Motion for Leave to Amend as soon as practically possible after Ms. Davidson's deposition, when the revelations of the Defendants' mental states were revealed. Furthermore, Ms. Chambers has observed all or most depositions that have been taken. Counsel for Defendant Davidson is the same counsel that represented Defendant Fanta when he was previously a defendant in the case, and therefore Fanta will suffer no gap in legal representation. Plaintiffs

pleaded the underlying facts of a malicious prosecution claim in the original Complaint, but did not know the facts to support a malicious mental state for each of the defendants. Defendants, however, did know those facts. Therefore, there is no part of the Plaintiffs' new claims that is a surprise to Defendants, and while the additional claims are different, the scope of the case is not dramatically changed.

Plaintiffs ask that this Court not foreclose relief against Defendants Davidson, Fanta, and Chambers without allowing Plaintiffs to present evidence of these Defendants' liability for Plaintiffs' injuries.

## V. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court grant the motion to amend and accept the proposed Second Amended Complaint.

Respectfully submitted this 3rd day of February 2026.

Killmer Lane, LLP

*s/ David A. Lane*

______________________________

David A. Lane
Thomas B. Kelley
Madison Schaefer
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
dlane@killmerlane.com
tkelley@killmerlane.com
mschaefer@killmerlane.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 3rd, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter H. Doherty
Lasater & Martin, P.C.
5251 DTC Parkway, Suite 800
Greenwood Village, CO 80111
Phone: 303-730-3900
peter@lasaterandmartin.com

*Counsel for Defendants*

Killmer Lane, LLP

*s/ Jamie Akard*

______________________________
Jamie Akard