IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 24-cv-02135-SKC-STV

NEZA BHARUCHA;
ZARRIN HOSPITALITY GROUP, INC.; and
COMMUNITY ECONOMIC DEFENSE PROJECT,

Plaintiffs,

v.

CITY OF GREENWOOD VILLAGE;
CITY ATTORNEY TONYA HAAS DAVIDSON, in her individual capacity;
CITY MANAGER JOHN JACKSON, in his individual capacity; and
DETECTIVE TOM FANTA, in his individual capacity;

Defendants.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiffs Neza Bharucha, Zarrin Hospitality Group, Inc. ("ZHG"), and the Community Economic Defense Project ("CEDP"), by and through their attorneys David Lane and Madison Schaefer of KILLMER LANE LLP, allege and aver the following:

## INTRODUCTION

1. The Motel 6 ("Motel") in Greenwood Village, Colorado, owned and operated by Plaintiffs Neza Bharucha and ZHG, has for many years welcomed the most vulnerable people in the city to rent rooms. Unhoused people, particularly unhoused people with disabilities, have frequently used charity or government-provided housing vouchers to seek temporary shelter at the Motel. As the only motel or hotel in the city with both a low enough price point for vouchers and a compassionate commitment to serving vulnerable people, the Motel has distinguished itself

among the other hotels and motels in the city as a safe haven for unhoused people with mental illness and/or addiction issues, which are disabilities as defined by the Americans with Disabilities Act ("ADA").

2. Greenwood Village, however, has made it clear that it does not want unhoused people with mental illness and/or addiction issues to remain inside its city limits for long. The city has directed substantial police and municipal resources toward preventing the Motel from serving unhoused people with disabilities, including by passing an ordinance limiting the length of stay at motels/hotels to 29 days, by discriminatorily applying exceptions to that ordinance to intentionally exclude people with disabilities, by conducting police surveillance at the Motel on a daily basis for years, and even by personally serving Ms. Bharucha with a criminal summons under the 29-day ordinance (a land use ordinance) for her opposition to discrimination on behalf of her guests with disabilities. The city has treated Plaintiffs ZHG and Bharucha differently and worse on the basis of their association with people with disabilities for over a decade. The Community Economic Defense Project, which currently partners with ZHG and Ms. Bharucha to provide emergency housing to vulnerable people, faces future harm to its clients and its organizational mission as a result of Defendants' discrimination.

3. Through their discriminatory acts, Defendants have violated the Colorado and United States Constitutions, Americans with Disabilities Act, the Rehabilitation Act, the Colorado Anti-Discrimination Act, and C.R.S. § 38-1-101(3)(a).

**JURISDICTION AND VENUE**

4. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983; 42 U.S.C. § 1988; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("Title II"); Section 504 of

the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"); the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-802; C.R.S. § 38-1-101(3)(a); and C.R.S. § 13-21-131.

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1367 (supplemental jurisdiction), and 28 U.S.C. § 2201 (declaratory relief).

6. This Court has personal jurisdiction over Defendants, which are a municipality and employees of a municipality located in the District of Colorado.

7. Venue is proper in the District Court for the District of Colorado pursuant to 28 U.S.C. § 1391 because the unlawful practices alleged herein occurred within the District of Colorado.

## PARTIES

8. Plaintiff ZHG is a Colorado corporation that operates (as franchisee) a Motel 6 ("the Motel"), located at 9201 E Arapahoe Rd, Greenwood Village, CO 80112. Many of the individuals who patronize the Motel are individuals with disabilities as that term is used in Title II, Section 504, and CADA.

9. Plaintiff Neza Bharucha is Corporate Secretary of ZHG. Her husband, Farhang Bharucha, is the sole owner of ZHG. Her responsibilities at the Motel include employee management; supervising day-to-day operations; rate management; and overseeing cleanliness, safety, security, guest relations, and risk management. Many of her customers at the Motel are individuals with disabilities as that term is used in Title II, Section 504, and CADA. Ms. Bharucha is also a licensed psychiatrist.

10. Plaintiff Community Economic Defense Project ("CEDP") is a Colorado non-profit organization whose scope encompasses a fully-integrated response to economic hardship.

Originating in the COVID-19 pandemic as a community organizing effort to protect Colorado renters from eviction and displacement, the organization now encompasses a holistic approach to preventing homelessness, including direct eviction legal defense, advocating for rights for unhoused individuals, and directly preventing homelessness through diversion efforts. As disability and homelessness are often inextricably linked, CEDP's advocacy and direct support efforts nearly always involve assisting clients with mental illness, addiction recovery, or other disabilities. The organization is located at 1600 Downing Street, Suite 600, Denver, CO 80218. The majority of the individuals currently housed at the Motel in partnership with CEDP are unhoused individuals with disabilities as that term is used in Title II, Section 504, and CADA.

11. Defendant Greenwood Village is a home rule municipality located in Arapahoe County, Colorado that, upon information and belief, receives federal funding to support its programs and activities.

12. At all times relevant to this Complaint, Defendant Tonya Haas Davidson was the City Attorney for Greenwood Village and was responsible for providing day-to-day legal advice to the City Council, City Manager, all boards and commissions, and all other city officials.

13. At all times relevant to this Complaint, Defendant John Jackson was the City Manager for Greenwood Village and was responsible for providing information to assist the City Council in developing policy and implementing City Council policy. Defendant Jackson was previously the Chief of Police in Greenwood Village from January 2011 to November 2017.

14. At all times relevant to this Complaint, Defendant Tom Fanta was employed as a Detective with the Greenwood Village Police Department and was responsible for investigating and solving crimes in the city, as well as presenting criminal cases to the District Attorney's Office for prosecution.

## STATEMENT OF FACTS

15. Plaintiffs Neza Bharucha and ZHG own and operate a Motel 6 ("Motel") in Greenwood Village, Colorado. Neville Sarkari bought the Motel in Greenwood Village in 2008 and managed the Motel through his company, Zarin Hospitality Group, Inc. (ZHG).

16. A central part of the Motel's business model and mission for over fifteen years has been to serve both typical Motel customers as well as individuals who use housing vouchers, most of whom have disabilities including mental illness and addiction issues.[1] The Motel does not allow any illicit drug use or illegal activity on the property.

17. Recognizing the unique needs of unhoused people with disabilities, the Motel has also developed longstanding partnerships with nonprofit and charitable organizations to facilitate the provision of critical social support services to guests with disabilities using the Motel's facilities. Ms. Bharucha's other career as a licensed psychiatrist has given her a particular empathy for her guests who suffer from mental illness and addiction issues.

18. Through these partnerships, the Motel has served over 2,800 vulnerable families, most or all of whom had or were associated with disabilities, since 2019.

19. In recognition of her good Samaritanism, Ms. Bharucha has received a number of awards, including the Social Service Award from the Denver Sheriff's Office on April 9, 2021. The award recognized Ms. Bharucha's generous aid in partnering with the city of Denver to provide motel rooms to vulnerable unhoused people with mental health and addiction issues during the COVID-19 pandemic.

[1] This aligns with statewide trends correlating homelessness with disability. In the Colorado Coalition for the Homeless 2021 Point-in-Time Study, seventy-five percent of adults experiencing homelessness reported having one or more disabling conditions.

20. Despite the potential challenges of catering to unhoused people with disabilities alongside general Motel clientele, the Motel is currently rated in the top 6% of Motel 6s nationwide based on customer reviews.

21. Greenwood Village is a wealthy municipality that does not have a single homeless shelter within its limits. The city's population has a median household income of $129,416.[2] The median value of owner-occupied housing units is a striking $984,400.[3]

22. However, situated only about ten miles south of the city of Denver, this affluent enclave is not fully insulated from the rise of homelessness in the state of Colorado.

23. As the cost of living in Colorado has skyrocketed over the last decade, homelessness has also drastically increased. Between 2012 and 2022, chronic homelessness in Colorado increased 130%.[4] In 2022, 66% of Colorado's homelessness was concentrated in the Denver-metro area.[5] Some unhoused people, including unhoused people with disabilities, live in Greenwood Village as well.

24. Because there are no shelters, the best temporary housing option for unhoused people with disabilities in Greenwood Village is often to seek vouchers from charitable organizations or local government agencies to stay in hotels and motels.

25. Unhoused people with disabilities can typically only afford the least expensive motels using vouchers and/or their own limited funds. The Motel is the lowest priced motel in Greenwood Village.

---

[2] "QuickFacts: Greenwood Village city, Colorado," United States Census Bureau, July 1, 2022 (https://www.census.gov/quickfacts/fact/table/greenwoodvillagecitycolorado/PST045222)
[3] *Id.*
[4] "The Colorado State of Homelessness Report 2022," Colorado Coalition for the Homeless, https://www.coloradocoalition.org/sites/default/files/2023-01/StateOfHomelessness%20%28SOH%29%202023%20%281%29.pdf.
[5] *Id.*

26. As a predictable consequence of the lack of support from the city of Greenwood Village to help unhoused people find long-term shelter, many unhoused individuals with disabilities have stayed at the Motel for longer periods of time than a typical guest might. This is also a predictable consequence of the welcoming and accommodating environment that Ms. Bharucha and ZHG have intentionally created at the Motel for all guests, including those on vouchers with disabilities.

**In 2014, Greenwood Village passed an ordinance limiting guest stays in hotels and motels to 29 days, with some exceptions.**

27. On June 16, 2014, Greenwood Village City Council held a meeting in which they discussed a proposed ordinance to limit hotel and motel stays to 29 days. The purported reasons for the ordinance as discussed by City Council were to prevent an increased risk of fire due to overloaded electrical circuits, fires from cooking, and increased fire load from stored personal belongings, as well to reduce crime at motels with long-term guests as measured by "calls for service." Defendant John Jackson, then the Chief of Police of Greenwood Village, was instrumental in influencing the City Council to introduce this new ordinance.

28. However, the city's purported reasons for the ordinance were clearly pretextual. Fire safety expert Jim Gassman was consulted by Plaintiffs about the effect of motel stays longer than 29 days on fire load. Mr. Gassman has been a licensed Professional Fire Protection Engineer for over thirty years with an expertise in building code compliance and fire suppression. Mr. Gassman opined that there is no legitimate correlation between guest stays that are longer than 29 days and increased fire safety. The Motel's guest rooms are of low fire load in nature with fire resistive properties and no coffee makers or cooking appliances. The Motel employees conduct regular (every 2-3 days) checks to ensure guests are not bringing in unpermitted cooking appliances, having open flames, or storing excessive belongings in their

rooms. There has only been one fire reported at the Motel in the building's 43-year history, and this was an outdoor dumpster fire.

29. According to City Council, the Motel and three other "non-extended stay but known residential use" hotels had more "calls for service" than extended stay hotels and apartment complexes in Greenwood Village at the time the ordinance was passed.

30. But "calls for service" as defined by City Council included calls "where a police officer is needed for any reason," including 911 calls for medical or mental health emergencies. The guests at the Motel who struggle with housing insecurity are also disproportionately physically or mentally ill and disabled. This metric, therefore, linked mental and physical illness and disability with criminality.

31. Greenwood Village City Council passed the ordinance and it went into effect in October of 2014.

32. The ordinance has an exception under § 16-17-90(b)(1) to permit longer-term stays where "there is a written contract between the hotel or motel and a governmental, charitable or insurance agency to house families in crisis who are receiving temporary housing assistance from said governmental, charitable or insurance agency."

33. The ordinance also has an exception under § 16-17-90(b)(2) to permit longer-term stays where "there is a written contract between the hotel or motel for an on-site resident manager or employee to live at the hotel or motel."

34. The ordinance has another exception under § 16-17-90(d) for *extended* stay hotels only, permitting guest stays longer than 120 days in a 150-day period for "a specific business entity for a business purpose which requires extended temporary occupancy." There is no

exception for business purposes at *non-extended* stay hotels or motels (hotels/motels without kitchens in the guest rooms).

35. Because there are few or no other motels in Greenwood Village at the Motel's price point (and no city-provided shelter options), the practical effect of the 29-day rule for unhoused individuals with disabilities is to force them to leave Greenwood Village in search of other temporary housing options outside the municipality's borders.

**<u>ZHG and Ms. Bharucha complied with the ordinance's "families in crisis" exception.</u>**

36. In the early days after the ordinance went into effect, the city was directing all people seeking to stay at a non-extended stay hotel for longer than 29 days to fill out a form entitled "Explanation of Occupancy in Greenwood Village Hotels, Motels, and Extended Stays," which was to be submitted to the Community Development Department. Sheryl Jaramillo, Greenwood Village Neighborhood Services Officer, was the point person for these requests.

37. For the first year and a half after passage of the ordinance, Greenwood Village was generally approving requests for ZHG's unhoused guests (most of whom had disabilities including mental illness and/or addiction issues).

38. On January 5, 2015, Mr. Sarkari spoke with a Greenwood Village police officer Rodney Valenzuela who confirmed that Mr. Sarkari could easily request a corporate extended stay if his guest is an employee of "a company that will come and stay more than 30 days," thus demonstrating that Greenwood Village was approving stays beyond 29 days for business reasons, despite the lack of an exception to the ordinance for that purpose.

39. On July 1, 2016, Mr. Sarkari was informed via email by Joy McGee, Planning Manager for Greenwood Village, that his guests did not qualify for an exception under the ordinance and would no longer be approved for extended stays beyond 29 days.

40. At the same time, starting in 2014 after the ordinance was passed, the Greenwood Village police began routinely patrolling the Motel parking lot and lobby. This targeted surveillance effort was directed by Defendant John Jackson, then the Chief of Police of Greenwood Village. Greenwood Village police were entering the Motel three to four times per day demanding motel guest lists in search of active warrants. It wasn't until 2019 when an American Civil Liberties Union attorney informed the Greenwood Village Police Department that these guest roster searches were illegal under *City of Los Angeles v. Patel*, 576 U.S. 409 (2015) that this practice ceased. However, daily police patrols in the parking lot never stopped, and Greenwood Village police continue to scan license plates and track cars that may have been at the Motel for longer than 29 days.

41. In 2017, Neza Bharucha (Neville Sarkari's daughter) and her husband Farhang Bharucha began helping with the motel. They subsequently took over ownership and operation of the hotel. Mr. Bharucha is now the sole shareholder and owner of the Motel. Mr. and Ms. Bharucha share finances.

42. In 2019, Ms. Bharucha formed an official partnership with Colorado Coalition for the Homeless ("CCH"), a charitable organization, to facilitate renting motel rooms for people in crisis due to homelessness and related disabilities.

43. The partnership was evidenced by written contracts, including a lease agreement between the organization and the Motel to rent five rooms on a long-term basis to be paid for by the organization and used for people in crisis who needed temporary emergency housing. They also formalized the partnership by creating Community Policies for CCH guests staying at the Motel.

44. This partnership brought the Motel's operations squarely under the ordinance's exception (§ 16-17-90(b)(1)) to permit longer-term stays where "there is a written contract between the hotel or motel and a governmental, charitable or insurance agency to house families in crisis who are receiving temporary housing assistance from said governmental, charitable or insurance agency." There is no requirement in the ordinance to seek permission from Greenwood Village before making use of this exception. Ms. Bharucha sought legal advice to confirm that the Motel's unhoused temporary residents with disabilities fell within the exception to the ordinance for families in crisis.

45. Around this time, Greenwood Village police officers began coordinating quarterly meetings with the Motel under the pretext of "community partnership." During these meetings, they persistently inquired about the organizations the Motel was working with and intimidated Mr. and Ms. Bharucha.

46. On December 11, 2019, ZHG was contacted by Greenwood Village Police Commander Joe Gutsgell who said that other police officers had informed him that CCH was working with the Motel to house the organization's clients. He expressed concern about his perception that this would increase crime at the Motel.

47. On March 16, 2020, at the start of the COVID-19 pandemic, the Denver Housing Authority (DHA) reached out to ZHG to inquire about renting the entire motel for six months. DHA wanted to provide housing for sick unhoused guests who were quarantining while either recovering from COVID or waiting for test results. The city of Greenwood Village was consulted.

48. Defendant City Manager John Jackson sent ZHG a letter on March 17, 2020 stating that the 29-day ordinance prohibited such a use, despite the fact that DHA and ZHG

intended to comply with the ordinance by only permitting guests to stay for 29 days or less, and that even if the stay was extended, it would qualify for the exception for families in crisis. The letter also claimed the use was prohibited because the Motel was not zoned for a medical facility, despite the fact that no medical treatment would have been provided.

49. In response to this letter, Ms. Bharucha objected and stated that she believed this partnership should qualify under the "families in crisis" exception to the ordinance. However, Defendant John Jackson called the Denver Mayor to attempt to put a stop to the partnership, and the partnership was ultimately canceled.

50. In April 2020, ZHG formed another long-term room rental partnership with Solutions for Achieving Fast, Effective Response (SAFER), a nonprofit housing assistance and mental health/addiction services program funded through grants and Arapahoe County. SAFER began renting 5 rooms and ultimately ramped up to 23 rooms by the end of the contract in August 2022. SAFER also hired peer coaches through the Hornbuckle Foundation to provide on-site support to Motel guests with mental health issues and who were recovering from drug and alcohol addictions. ZHG provided meeting rooms to SAFER to conduct peer meetings and case management support. No drug treatments or medical procedures of any kind were ever administered – all support was peer support and case management related, for which no special licenses or facilities are required.

**Greenwood Village explicitly told ZHG and SAFER that the exception for "families in crisis" does not apply to people with disabilities.**

51. On April 6, 2021, Ms. Bharucha and SAFER representatives Gina Shimeall and Brian Veatch were invited to a meeting with several police officers, Defendant City Attorney Tonya Davidson, and Assistant City Attorney Shannon Chambers-Nelson. Ms. Bharucha and the SAFER representatives were questioned extensively about their programs and the peer coaches

on site. Ms. Bharucha and the SAFER representatives explained that the peer coaches provided critical support to Motel guests with disabilities.

52. On April 9, 2021, Greenwood Village through Defendant City Attorney Tonya Haas Davidson sent a letter informing ZHG that "the property cannot be used to provide rehabilitation or counseling services."

53. The Motel is in a Mixed Commercial zoning district. Uses by right include hotels and motels as well as offices and medical and dental clinics. Though ZHG and Ms. Bharucha were not providing counseling services directly, their use of the Motel building to facilitate peer coaching support (a form of counseling) for Motel guests is a use by right.

54. The April 9, 2021 letter from Greenwood Village also stated that "stays cannot exceed 29 days in a consecutive 60-day period." Defendant Davidson specified that the 29-day rule exception for families in crisis was not meant for individuals "who are suffering from mental health and/or addiction issues."

55. Greenwood Village, through Defendant Davidson, thus explicitly defined its 29-day ordinance exception for families in crisis to exclude people with mental health and/or addiction-related disabilities.

56. This is an unlawfully discriminatory application of the exception for families in crisis, and forcing ZHG and Ms. Bharucha to comply with it forces them to choose between discriminating against its guests with disabilities or seemingly violating the ordinance.

57. In May 2021, ZHG formed a partnership with a nonprofit called Second Chance Center, like the partnerships with CCH and SAFER. The Second Chance Center requested to have unhoused guests with mental illness and/or addiction issues stay longer than 29 days in accordance with the exception for families in crisis. To avoid unlawfully discriminating against

people with disabilities, ZHG and Ms. Bharucha permitted people with disabilities to stay beyond 29 days.

58. By forcing ZHG and Ms. Bharucha to either unlawfully discriminate or risk municipal enforcement which could threaten the business, Defendants Greenwood Village and Davidson put Plaintiffs ZHG and Bharucha in an impossible position.

**Other similarly situated non-disabled individuals are being granted exceptions to the 29-day ordinance.**

59. In the April 9, 2021 letter, Defendant Davidson stated that "[t]he exception for families in crisis is meant to allow families who are displaced due to an emergency (usually a natural emergency) to stay longer than 29 days. It is not meant for individuals who have been released from jail and have nowhere to go and who are suffering from mental health and/or addiction issues."

60. This letter establishes that Greenwood Village has an explicit policy that families who are displaced due to a "natural emergency" can stay longer than 29 days whereas a person with mental illness and/or addiction issues (both constituting disabilities) cannot.

61. There is no non-discriminatory distinction between a family that is displaced due to a "natural emergency" and a person who is displaced in whole or in part due to mental illness or addiction-related disabilities. The only distinction, as plainly shown by Defendant Davidson's letter, is discrimination based on disabilities.

62. Greenwood Village routinely approves exceptions to the 29-day ordinance for corporate guests at similarly situated non-extended stay hotels/motels, even though there is no ordinance exception for corporate guests at non-extended stay hotels/motels, meaning that such stays technically violate the ordinance—the same as the disabled guests staying at the Motel for longer than 29 days, according to Defendants' interpretation of the ordinance.

63. For example, other similarly situated non-extended stay motels and hotels in Greenwood Village, including the Wingate Hotel, the Doubletree Hotel, La Quinta North Hotel, the Sheraton Hotel, the Hyatt Place Hotel, and the Springhill Suites Hotel, all allow guests to stay longer than 29 days in a 60-day period for business reasons, despite not falling under any exception to the ordinance, and have not been subject to enforcement actions by the city. In some instances, these hotels have received direct approval via phone from the city for the extended stay due to the guest's alleged business purposes, despite the lack of any relevant exception for extended business stays at non-extended stay hotels. In other instances, the hotels allowed extended stays without seeking approval from the city and were still not cited by the city for violating the ordinance. Upon information and belief, these hotels are also not subject to multiple daily patrols by the Greenwood Village police and other scrutiny.

64. There is no non-discriminatory distinction between a person staying in a hotel for an extended period of time because of business reasons as compared to a person staying for an extended period of time who has disabilities.

**Greenwood Village retaliated against ZHG's and Ms. Bharucha's opposition to Defendants' discriminatory application of the 29-day ordinance by attempting to criminally prosecute Ms. Bharucha.**

65. Since 2014, Mr. Sarkari and his daughter Ms. Bharucha have raised consistent opposition to the 29-day ordinance, and have specifically cited concerns about discrimination against people with disabilities on numerous occasions.

66. For example, at the April 6, 2021 meeting with Ms. Bharucha, SAFER representatives Gina Shimeall and Brian Veatch, police officers, Defendant City Attorney Tonya Davidson, and Assistant City Attorney Shannon Chambers-Nelson, Ms. Bharucha raised her specific concerns that Greenwood Village's interpretation of its ordinance exception for families

in crisis discriminates against people with disabilities. Ms. Bharucha and SAFER specifically informed the city officials that Ms. Bharucha and ZHG were working with families with disabilities and were merely offering reasonable accommodations to provide support to these guests. After the meeting, SAFER also hired an attorney to inform Defendant Davidson that Greenwood Village was violating the ADA by excluding individuals with "mental health/and or addiction issues" from being considered as "families in crisis."

67. On August 16, 2022, ZHG received a Court Order for the Production of Records pursuant to C.R.S. § 16-3-301.1 to provide documents and information about rooms rented by the Second Chance Center, SAFER, or the Hornbuckle Foundation. The Order was issued by Greenwood Village Municipal Judge Elizabeth Shifrin based on an affidavit filed by Greenwood Village Detective Tom Fanta and the records were intended to serve as "material evidence in a subsequent criminal prosecution."

68. Second Chance Center and Hornbuckle Foundation also received nearly identical orders on or about August 16, 2022. The Second Chance Center ultimately produced the requested documents in their possession.

69. Detective Tom Fanta knew that the 29-day ordinance was a civil land-use ordinance which "does not constitute a crime and the punishment imposed shall not be deemed for any purpose to be penal or criminal punishment." Greenwood Village municipal ordinance § 16-1-80(c). Detective Fanta also knew that C.R.S. § 16-3-301.1 is not applicable to violations of municipal ordinances. C.R.S. § 16-1-102.

70. Despite this knowledge, Detective Fanta fraudulently represented to the Municipal Court that he was seeking these documents as "material evidence in a subsequent criminal prosecution." Detective Fanta committed this fraud upon the Municipal Court with a

malicious intent to target and intimidate the Motel and Neza Bharucha personally, and to pursue a criminal investigation against the Motel and Neza Bharucha without any probable cause that a crime had been committed.

71. Defendant Davidson and Chambers-Nelson also knew that the 29-day ordinance was a civil land-use ordinance which "does not constitute a crime and the punishment imposed shall not be deemed for any purpose to be penal or criminal punishment." Greenwood Village municipal ordinance § 16-1-80(c). Defendant Davidson and Chambers-Nelson also knew that C.R.S. § 16-3-301.1 is not applicable to violations of municipal ordinances. C.R.S. § 16-1-102.

72. ZHG and Hornbuckle Foundation filed a joint Motion to Vacate Court Order, and the city responded. In her response, Shannon Chambers-Nelson affirmatively argued that "[a]ny violation of law or ordinance would still constitute a criminal prosecution," despite her knowledge that the ordinance is explicitly deemed to "not constitute a crime." Greenwood Village ordinance § 16-1-80(c). This argument was a knowingly false statement of the law to the Municipal Court, with the malicious intent to pursue an unlawful criminal prosecution against the Motel and Neza Bharucha without probable cause that any crime had been committed. Defendant Davidson and Chambers-Nelson discussed making this groundless argument to the Municipal Court, but Chambers-Nelson was given autonomy over her formulation of these specious legal arguments. Relying on Chambers-Nelson's knowingly false legal arguments, the Municipal Court denied ZHG and Hornbuckle's motion and ordered the records produced.

73. ZHG and Hornbuckle appealed to the state District Court.

74. On May 18, 2023, while the appeal was pending, Detective Fanta served Neza Bharucha personally with a criminal summons for violating the 29-day ordinance. Despite knowing that the 29-day ordinance did not authorize a criminal prosecution and was not a

criminal ordinance, Detective Fanta made the affirmative choice to mark the summons as "criminal" and to fraudulently select "M" for "misdemeanor" on the criminal custody report, rather than selecting "O" for "other." Detective Fanta consulted with Defendant Davidson and Chambers-Nelson when determining the charges to be filed. All three knew that Ms. Bharucha would understand the summons to be a criminal charge, and knew that Ms. Bharucha would likely experience emotional distress as a result of the charge. The city provided Ms. Bharucha's counsel with a staggering 2,200 pages of discovery, indicating that the city's police department had invested a remarkable amount of time and resources into investigating and prosecuting Ms. Bharucha personally for her part in providing temporary housing to people with disabilities.

75. Detective Fanta led the investigation into Ms. Bharucha and the Motel. In his offense report, Detective Fanta emphasized multiple times that treatment for addiction recovery and mental health services is not a use by right in the Motel's zoning district, despite the fact that the zoning district permits medical offices as a use by right, including counseling offices. Detective Fanta's intentional discrimination against people with mental illness and/or addiction issues was the driving force behind his extensive criminal investigation of a potential violation of a land use ordinance.

76. In addition to running the Motel, Ms. Bharucha is a licensed psychiatrist, and feared how a pending criminal charge could affect her license to practice medicine.

77. Upon information and belief, Defendant City Manager John Jackson influenced the Greenwood Village Police Department to continue his longstanding efforts as prior Chief of Police to excessively patrol the Motel, and ultimately to criminally charge Ms. Bharucha herself.

78. On August 9, 2023, District Court Judge Thomas W. Henderson granted ZHG and Hornbuckle's appeal on the grounds that C.R.S. § 16-3-301.1 only authorizes state judges, not

municipal judges, to order the production of documents. Judge Henderson also found based on the record that Greenwood Village intended to use the documents to prosecute ZHG under the 29-day ordinance, which is not a criminal statute and therefore could not be grounds for the production of documents under C.R.S. § 16-3-301.1 even if the municipal judge had the authority to issue the order.

79. On August 29, 2023, after Ms. Bharucha filed a motion to dismiss in the pending criminal case, Greenwood Village moved to dismiss its criminal prosecution against Ms. Bharucha based on the District Court Judge's ruling that the 29-day ordinance is plainly not a criminal statute.

80. Although the criminal prosecution was dismissed, the message to ZHG and Ms. Bharucha was clear: Greenwood Village is willing to use any legal tools in its arsenal to exclude marginalized people from its wealthy white suburbia. Ms. Bharucha felt deeply intimidated by Greenwood Village and the Greenwood Village Police Department's efforts to subject her to personal criminal liability. This was clearly an effort to weaponize an ordinance in the Land Development Code chapter of the municipal code to frighten Ms. Bharucha into halting her efforts to support unhoused individuals with disabilities.

81. Though the criminal case was dismissed, Ms. Bharucha continues to feel intimidated by the constant daily police presence at the Motel.

**SAFER was forced to terminate its partnership with ZHG and Ms. Bharucha in August 2022 because of Greenwood Village's 29-day ordinance and the retaliation against Ms. Bharucha.**

82. On or about August 31, 2022, SAFER was forced to move its program participants out of the Motel and over to the Green Tree Inn, outside of Greenwood Village, after

Ms. Bharucha and other organizations were subpoenaed for confidential information about SAFER program participants.

83. SAFER feared harassment of their program participants by Greenwood Village police, and also feared being subjected to a criminal investigation, as later became true for Ms. Bharucha.

84. The termination of this partnership resulted in substantial loss of income to Ms. Bharucha (through her husband's ownership of the Motel) and ZHG.

85. Greenwood Village, through its application of the 29-day ordinance, is intentionally discriminating against people with disabilities by specifically denying "people with mental illness and/or drug addiction" an opportunity to use the exception for families in crisis to stay in a motel for more than 29 days in a 60-day period, which is available to other similarly situated non-disabled people. Likewise, Greenwood Village targeted ZHG and Ms. Bharucha for allegedly violating the ordinance, yet did not enforce the ordinance against other similarly situated hotels/motels who let guests stay longer than 29 days without meeting an exception under the ordinance, showing its intent to target the Motel for serving disabled individuals.

86. Greenwood Village has also unlawfully retaliated against Ms. Bharucha for her opposition to the City's discrimination by personally criminally prosecuting Ms. Bharucha without a legal basis to do so.

87. Greenwood Village's discrimination has resulted in significant economic harm (among other injuries) to Ms. Bharucha and ZHG.

**The Community Economic Defense Project formed a partnership with Ms. Bharucha and ZHG to temporarily house vulnerable unhoused individuals, including people with disabilities.**

88. In February 2024, ZHG and Ms. Bharucha formed a partnership with the Community Economic Defense Project to provide temporary emergency housing to vulnerable people, many of whom have disabilities.

89. Like the partnerships with CCH, SAFER, and Second Chance Center, Plaintiffs considered the partnership with CEDP to fall under the "families in crisis" exception to the 29-day ordinance.

90. Currently, CEDP utilizes an average of 10 rooms per night for its guests. This partnership is central to CEDP's mission to provide direct services and support to vulnerable unhoused people, many of whom have disabilities, specifically by finding them housing. The Motel serves as temporary bridge housing for CEDP clients while CEDP arranges for permanent housing, which typically takes around 3 months. Currently, the majority of CEDP's clients who are staying at the Motel have at least one household member with a disability.

**Greenwood Village now seeks to abolish the exception for families in need as continued discrimination against people with disabilities and retaliation against Ms. Bharucha and ZHG for their opposition to disability discrimination.**

91. In a phone call on or about June 27, 2024, Defendant City Manager John Jackson and Ms. Bharucha discussed the city's desire to purchase the Motel, which Ms. Bharucha entertained because of her exhaustion with the police harassment at the Motel. In the same conversation, Defendant Jackson threatened Ms. Bharucha with an increased police presence in the area around the Motel.

92. On July 1, 2024, Greenwood Village City Council held a vote regarding the removal of the "families in crisis" exception within § 16-17-90(b)(1). The amendment would also remove the "on-site resident manager or employee" exception under § 16-17-90(b)(2). Ms. Bharucha and ZHG had consistently employed at least one on-site resident manager or employee

for years prior to the proposed amendment. The second reading (and potential adoption) of the amendment to remove the exceptions was scheduled for August 5, 2024. The ordinance amendment would then be effective 6 days after final publication. Every City Councilmember voted to eliminate the exceptions for families in crisis and motel employees in the first reading on July 1, 2024.

93. The sole purported justification for the amendment to eliminate the exceptions is based on the International Building Code which, in its most recent form, requires different fire protection systems for extended stay hotels versus non-extended stay hotels. Specifically, in the Staff Report for the amendment, Defendant City Attorney Davidson stated that the ordinance exception allows guests to "stay in a building not equipped for long-term stays from a fire-protection standpoint." Defendant Davidson further incorrectly characterized long-term stays in non-extended motels/hotels as a "change in use" that would require a new certificate of occupancy.

94. This justification is pretext for discrimination because updates to the International Building Code, by its own language, do not apply retroactively. Only new structures or existing structures that undergo extensive physical changes need to comply with updated codes and apply for a new certificate of occupancy. The Motel has not undergone any extensive physical changes prompting application of new building codes – the building codes in place at the time of the building's certificate of occupancy apply.

95. The Motel's certificate of occupancy was issued in 1980 and applied the 1979 Uniform Building Code. This code did not distinguish between extended stay and non-extended stay motels/hotels. There was no limitation on the number of days a guest could stay based on fire load or any other building safety reason.

96. Greenwood Village makes the International Building Code operative on buildings in its jurisdiction through ordinances. The most recent Greenwood Village ordinance enacting the International Building Code was in 2020, enacting the 2018 International Building Code. The 2018 International Building Code states that "[t]he legal occupancy of any structure existing on the date of adoption of this code shall be permitted to continue without change."

97. This is the typical practice of municipalities. Enforcing code updates on all pre-existing buildings would be impractical and overly burdensome, and would interfere with many businesses' ongoing operations, as is recognized in the non-retroactivity of the International Building Code itself.

98. The State of Colorado has also specifically prohibited Greenwood Village from enacting or enforcing an ordinance, resolution, or regulation in such a way that terminates or eliminates by amortization a nonconforming property use that was lawful at its inception. C.R.S. § 38-1-101(3)(a). Enforcement of the amended ordinance explicitly violates this state law, which was passed with the intent to protect against this very circumstance.

99. Thus, the amended ordinance removed the exception that ZHG and Ms. Bharucha believe should and does allow the Motel to serve unhoused individuals with disabilities by letting them stay longer than 29 days, even though the applicable building code does not require the Motel's structure to be any different to be equipped for longer stays.

100. ZHG also has three employee apartments with full kitchens, authorized under § 16-17-90(b)(2). The Motel is the only hotel or motel in Greenwood Village that makes use of this exception. The effort to eliminate the employee apartment exception is an additional form of targeted retaliation against ZHG and Ms. Bharucha, to punish ZHG and Ms. Bharucha for their association with people with disabilities. This, too, violates C.R.S. § 38-1-101(3)(a).

101. During the vote, members of the public were allowed to voice their thoughts regarding removal of the exceptions.

102. Ms. Bharucha expressed her objection to removing the ordinance exception for families in crisis based on discrimination against people with disabilities. She also asked for Greenwood Village City Council to consider a reasonable accommodation for families with disabilities, because moving from a motel every 29 days would be extremely cumbersome. She also informed them of the critical nature of the employee apartments on the daily operations of the Motel.

103. In response to the amendment's fire safety justification, Ms. Bharucha volunteered to add whatever modifications were required to the Motel if the Council would maintain the exception for the benefit of her customers with disabilities.

104. Jim Gassman, the fire safety expert, also testified and informed the Council that there is no correlation between staying longer than 29 days in a motel room and increased fire risk.

105. Despite these comments, Council had no debate among its members before a unanimous agreement on first reading to eliminate the exceptions. The introduction of this amendment on July 1, 2024, and its ultimate passage on August 5, 2024, serves as additional evidence of Greenwood Village's unceasing efforts to legalize discrimination against people with disabilities by excluding them from the Motel for longer than 29 days.

106. This vote targets Ms. Bharucha and ZHG for their refusal to apply the ordinance exception discriminatorily against people with disabilities, as instructed by Greenwood Village.

107. The impact of the abolition of the exception for families in crisis will primarily affect Ms. Bharucha's guests who have disabilities, including guests who are clients of CEDP.

108. The new ordinance amendment, removing the exception for families in crisis, would make it unlawful for CEDP to shelter its clients at the Motel for more than 29 days, which is shorter than the typical period of time needed for temporary bridge housing while CEDP seeks permanent housing for its clients. This would substantially hinder the central pillar of CEDP's mission: providing emergency housing for the most vulnerable people, including people with disabilities. Forcing CEDP to move those individuals out of Greenwood Village every 29 days would impose a significant financial and logistical burden on the organization, and could result in the loss of the partnership entirely between the Motel and CEDP. This is also true if Greenwood Village does not pass the ordinance amendment but continues to enforce its exception for families in crisis discriminatorily against people with disabilities.

109. Through its discriminatory acts, Greenwood Village has violated the Equal Protection Clause of the 14th Amendment of the U.S. Constitution, the Americans with Disabilities Act, the Rehabilitation Act, the Colorado Anti-Discrimination Act, and C.R.S. § 38-1-101(3)(a).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Violation of the Fourteenth Amendment Equal Protection Clause – Disability Discrimination
*By All Plaintiffs Against All Defendants*

110. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

111. The Individual Defendants (City Manager John Jackson, and City Attorney Tonya Haas Davidson) were acting under color of state law at all relevant times.

112. Plaintiffs had a clearly established right not to be treated differently and worse because of their association with people with disabilities.

113. Ms. Bharucha and ZHG have objected to discrimination against their unhoused customers who have disabilities. Because of this association, they have been targeted by Defendants for differential and worse treatment. Ms. Bharucha and ZHG have therefore been discriminated against because of their association with people with disabilities.

114. CEDP works on behalf of unhoused people, most of whom have disabilities. CEDP's organizational resources and mission of providing housing for vulnerable individuals, including those with disabilities, will be substantially harmed by Defendants' unequal enforcement of the ordinance (or elimination of the exception entirely) on the basis of disability discrimination.

115. Differential treatment by a governmental entity and its agents on the basis of disability cannot be justified by an arbitrary and irrational reason.

116. Defendants have arbitrarily and irrationally applied and enforced the 29-day ordinance on the basis of discrimination against people with "mental illness and/or addiction issues," which are disabilities as defined by the ADA.

117. Defendant Davidson wrote the April 9, 2021 letter explicitly stating the discriminatory policy that the "families in crisis" exception to the ordinance was inapplicable for people with "mental illness and/or addiction issues," which are disabilities as defined by the ADA.

118. Defendant Jackson implemented that discriminatory policy through direction of the City Manager's office and through his influence over the Greenwood Village Police Department to disproportionately target the Motel and Ms. Bharucha personally with police surveillance and enforcement.

119. Upon information and belief, the Individual Defendants Davidson and Jackson advised and directed City Council to introduce the new ordinance amendment to eliminate the exception entirely in order to exclude people with disabilities from Greenwood Village and retaliate against ZHG and Ms. Bharucha for their opposition to discrimination.

120. Defendants established an explicitly arbitrary and irrational policy of denying an exception to the 29-day ordinance to individuals including but not limited to those with whom Plaintiffs are associated solely on the basis of disability (or perceived disability) while explicitly granting the exception to similarly situated non-disabled people, such as those displaced by natural disasters or those needing to stay longer than 29 days for business reasons.

121. In doing so, Defendants engaged in intentional discrimination against people with disabilities including those with whom Plaintiffs are associated by treating them unequally and worse under the same law because of their disabilities.

122. Defendants have targeted Ms. Bharucha and the Motel with a disproportionate police presence to enforce the 29-day ordinance.

123. Defendants have criminally charged Ms. Bharucha personally under a land-use ordinance to enforce the 29-day rule. Upon information and belief, Defendants have never served any other hotel or motel representative, or any other person, with a criminal summons under the 29-day ordinance.

124. Defendants served ZHG with an order to produce documents as part of their unlawful criminal investigation under a land-use ordinance to enforce the 29-day rule. Upon information and belief, Defendants have never served any other hotel or motel, or any other person or entity, with an order to produce documents as part of a criminal investigation under the 29-day ordinance.

125. Other similarly situated hotels, including the Wingate Hotel, the Doubletree Hotel, La Quinta North Hotel, the Sheraton Hotel, the Hyatt Place Hotel, and the Springhill Suites Hotel, all allow guests to stay longer than 29 days in a 60-day period when the justification is a business purpose. These hotels, which do not have contracts with nonprofit and charitable organizations to serve people with disabilities, have not been subject to enforcement actions by Defendants despite the lack of any ordinance exception justifying their noncompliance.

126. Defendant Greenwood Village is liable for its discriminatory policies, training, practices, habits, customs, widespread usages, and failures to adequately train and supervise its employees and contractors with respect to the equal protection rights of people with disabilities, and people associated with people with disabilities.

127. At all relevant times, Defendant Greenwood Village had a policy, custom, and/or practice of unequal and worse treatment of unhoused people with "mental illness and/or addiction issues," which constitute disabilities under the ADA, specifically by refusing to apply the exception for families in crisis for people with disabilities. This policy, custom, and/or practice of unequal and worse treatment of people with disabilities extended to those who associate with people with disabilities.

128. Defendant Greenwood Village also failed to train its employees that all city ordinances should be applied and enforced equally, rather than differentially on the basis of disability.

129. Defendant Greenwood Village's failures in training and supervision were so obvious that the failure to provide the same was deliberately indifferent to the rights of the

relevant public and a moving force in the complained of injuries of Plaintiffs Bharucha and ZHG, and will be a moving force in future injuries against all Plaintiffs.

130. Defendant Greenwood Village, through policy makers and final delegated decision-makers, and as a matter of official policy, ratified its employees' and subordinates' unconstitutional conduct by approving their decisions and the basis for them.

131. The ratification of the conduct that caused the injuries of Plaintiffs Bharucha and ZHG and that will cause the injuries of all Plaintiffs in the future is not alleged as proof that ratification itself "caused" their damages. Rather, it evidences that the conduct that caused the injuries to Plaintiffs Bharucha and ZHG and that will cause injuries to all Plaintiffs in the future was engaged in pursuant to policy, custom, and practice of the Defendant Greenwood Village.

132. Defendant Greenwood Village's customs, practices, and policies, as well as its lack of training on this subject, were the proximate cause of the unlawfully unequal treatment of Plaintiffs under the 29-day ordinance, and will cause future injuries.

133. Defendants' actions and inactions are and will continue to be the proximate and legal cause of Plaintiffs' injuries.

134. Plaintiffs have been and continue to be damaged by Defendants' unlawful conduct under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

135. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

136. All Plaintiffs, including Plaintiff CEDP, are entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future due to Defendants' discriminatory conduct including but not limited to

striking down the 29-day ordinance or requiring Defendants to grant exceptions to people with disabilities.

## SECOND CLAIM FOR RELIEF
**42 U.S.C. § 12131 *et seq.* – Violation of Title II of the Americans with Disabilities Act of 1990, as Amended**
**Unlawful Discrimination and Failure to Reasonably Accommodate**
*By All Plaintiffs Against Defendant Greenwood Village*

137. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

138. The Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., and specifically 42 U.S.C. §§ 12131-12134, prohibits discrimination in public services on the basis of disability. 42 U.S.C. § 12132 provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

139. The ADA defines a "public entity" to include any state or local government or any department, agency, special purpose district, or other instrumentality of a State or local government, 42 U.S.C. § 12131(1). The municipality of Greenwood Village is a "public entity" within the meaning of the ADA.

140. People with mental illness and certain addiction issues are "qualified individuals with disabilities" within the meaning of the ADA. 42 U.S.C. §§ 12102(1); 12131(2); 12210(b).

141. People who are perceived as having disabilities are also protected by the ADA. 42 U.S.C. §12102(3).

142. Plaintiffs are all individuals or entities that provide services to individuals with disabilities and as such have a relationship or association with such individuals as defined in 28 C.F.R. § 35.130(g).

143. Defendant Greenwood Village established an explicit policy of denying an exception to the 29-day ordinance to individuals including those with whom Plaintiffs are associated solely on the basis of disability (or perceived disability) while explicitly granting the exception to similarly situated non-disabled people.

144. In doing so, Defendant Greenwood Village engaged in intentional discrimination against people with disabilities including those with whom Plaintiffs are associated by denying them opportunities based on their disabilities.

145. Alternatively, or in addition, Defendant Greenwood Village's 29-day ordinance exception policy has a disparate impact on people with disabilities including but not limited to those with whom Plaintiffs are associated.

146. Defendant Greenwood Village failed to reasonably accommodate individuals with disabilities including but not limited to those with whom Plaintiffs are associated by refusing to grant the same accommodations that are granted to other similarly situated people without disabilities, such as corporate guests.

147. Defendant Greenwood Village's actions and inactions violated Title II of the ADA and its implementing regulations.

148. In implementing and enforcing a discriminatory ordinance exception policy, Defendant Greenwood Village forced Plaintiffs ZHG and Bharucha to choose between participating in discriminatory acts or violating the ordinance.

149. Defendant Greenwood Village had no legitimate basis for imposing a discriminatory policy in violation of the ADA.

150. Defendant Greenwood Village's actions and inactions are the proximate and legal cause of Plaintiffs' injuries.

151. Plaintiffs have been and continue to be damaged by Defendant Greenwood Village's unlawful conduct under the ADA.

152. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

153. All Plaintiffs, including Plaintiff CEDP, are entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future due to Defendant's discriminatory conduct including but not limited to striking down the 29-day ordinance or requiring Greenwood Village to grant exceptions to people with disabilities.

**THIRD CLAIM FOR RELIEF**
**29 U.S.C. § 794 – Section 504, Rehabilitation Act of 1973**
**Unlawful Discrimination and Failure to Reasonably Accommodate**
*By All Plaintiffs Against Defendant Greenwood Village*

154. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

155. The city of Greenwood Village, upon information and belief, receives federal funding to support its programs and activities.

156. The Rehabilitation Act, 29 U.S.C. §§ 701 et seq., and specifically 29 U.S.C. § 794 (known as Section 504), prohibits discrimination in programs or activities receiving federal financial assistance on the basis of disability. 29 U.S.C. § 794(a) provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705 (20) of this title, shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

157. The Rehabilitation Act defines a "program or activity" to include "all of the operations of…a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b). The activities of Greenwood Village in

promulgating and enforcing the 29-day ordinance constitute a "program or activity" within the meaning of the Rehabilitation Act.

158. People with mental illness and certain addiction issues are "qualified individuals with disabilities" within the meaning of the Rehabilitation Act. §§ 705(20); 794(a).

159. People who are perceived as having those disabilities are also protected from denial of opportunities under the Rehabilitation Act. 29 U.S.C. § 705(20)(B) (incorporating by reference 42 U.S.C. § 12102).

160. Plaintiffs are all individuals or entities that provide services to individuals with disabilities and as such have a relationship or association with such individuals.

161. Defendant Greenwood Village established an explicit policy of denying an exception to the 29-day ordinance to individuals including those with whom Plaintiffs are associated solely on the basis of disability (or perceived disability) while explicitly granting the exception to similarly situated non-disabled people.

162. In doing so, Defendant Greenwood Village engaged in intentional discrimination against people with disabilities including those with whom Plaintiffs are associated by denying them opportunities based on their disabilities.

163. Alternatively, or in addition, Defendant Greenwood Village's 29-day ordinance exception policy has a disparate impact on people with disabilities including but not limited to those with whom Plaintiffs are associated.

164. Defendant Greenwood Village failed to reasonably accommodate individuals with disabilities including but not limited to those with whom Plaintiffs are associated by refusing to grant the same accommodations that are granted to other similarly situated people without disabilities, such as corporate guests.

165. Defendant Greenwood Village's actions and inactions violated the Rehabilitation Act and its implementing regulations.

166. In implementing and enforcing a discriminatory ordinance exception policy, Defendant Greenwood Village forced Plaintiffs ZHG and Bharucha to choose between participating in discriminatory acts or violating the ordinance.

167. Defendant Greenwood Village had no legitimate basis for imposing a discriminatory policy in violation of the Rehabilitation Act.

168. Defendant Greenwood Village's actions and inactions are the proximate and legal cause of Plaintiffs' injuries.

169. Plaintiffs have been and continue to be damaged by Defendant Greenwood Village's unlawful conduct under the Rehabilitation Act.

170. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

171. All Plaintiffs, including Plaintiff CEDP, are entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will in the future suffer due to Defendant Greenwood Village's discriminatory conduct including but not limited to striking down the 29-day ordinance or requiring Greenwood Village to grant exceptions to people with disabilities.

## FOURTH CLAIM FOR RELIEF
## 42 U.S.C. § 12203 – Violation of Title IV of the Americans with Disabilities Act of 1990, as Amended
## Unlawful Retaliation, Interference, Coercion, and Intimidation

*By Plaintiffs ZHG and Bharucha Against Defendant Greenwood Village*

172. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

173. Plaintiffs ZHG and Bharucha consistently voiced their good-faith opposition to the 29-day ordinance and its interpretation and application by Defendant Greenwood Village as well as their belief that Plaintiffs' interpretation of the exception for families in crisis was lawful. This is a protected activity under the ADA.

174. Plaintiffs ZHG and Bharucha requested reasonable accommodations for individuals with disabilities by requesting either an exception to the 29-day rule or that the existing "families in crisis" exception apply to the Motel's longer-term guests with disabilities on multiple occasions. This is a protected activity under the ADA.

175. Plaintiffs ZHG and Bharucha refused to comply with Defendants' construction of the ordinance so as to avoid its discriminatory intent and impact. This is a protected activity under the ADA.

176. Plaintiffs ZHG and Bharucha aided and encouraged individuals to exercise and enjoy their rights under the ADA. This is a protected activity under the ADA.

177. Defendant Greenwood Village retaliated against Plaintiffs ZHG and Bharucha for their protected activities by attempting to criminally prosecute Ms. Bharucha individually, using the 29-day ordinance as an unlawful basis for the prosecution.

178. Defendant Greenwood Village retaliated against Plaintiffs ZHG and Bharucha for their protected activities by serving ZHG with an order to produce confidential records for use in a criminal prosecution, using the 29-day ordinance as an unlawful basis for the court order.

179. Defendant Greenwood Village's actions and inactions violated the ADA's prohibition against retaliation, coercion and intimidation and its implementing regulations.

180. Defendant Greenwood Village had no legitimate basis for retaliating against Plaintiffs for their opposition to a discriminatory policy in violation of the ADA.

181. Defendant Greenwood Village's actions and inactions are the proximate and legal cause of Plaintiffs ZHG and Bharucha's injuries.

182. Plaintiffs ZHG and Bharucha have been and continue to be damaged by Defendant Greenwood Village's unlawful conduct under the ADA.

183. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

184. Plaintiffs are also entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future due to Defendant Greenwood Village's retaliation, interference, coercion, and intimidation including but not limited to striking down the 29-day ordinance or requiring Greenwood Village to grant exceptions to people with disabilities.

**FIFTH CLAIM FOR RELIEF**
**29 U.S.C. § 701 *et seq.* – Section 504, Rehabilitation Act of 1973**
**Unlawful Retaliation**
*By Plaintiffs ZHG and Bharucha Against Defendant Greenwood Village*

185. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

186. Plaintiffs ZHG and Bharucha consistently voiced their good-faith opposition to the 29-day ordinance and its interpretation and application by Defendant Greenwood Village as well as their belief that Plaintiffs' interpretation of the exception for families in crisis was lawful. This is a protected activity under the Rehabilitation Act.

187. Plaintiffs ZHG and Bharucha requested reasonable accommodations for individuals with disabilities by requesting either an exception to the 29-day rule or that the existing "families in crisis" exception apply to the Motel's longer-term guests with disabilities on multiple occasions. This is a protected activity under the Rehabilitation Act.

188. Plaintiffs ZHG and Bharucha refused to comply with Defendants' construction of the ordinance so as to avoid its discriminatory intent and impact. This is a protected activity under the Rehabilitation Act.

189. Plaintiffs ZHG and Bharucha aided and encouraged individuals to exercise and enjoy their rights under the Rehabilitation Act. This is a protected activity under the Rehabilitation Act.

190. Defendant Greenwood Village retaliated against Plaintiffs ZHG and Bharucha for their protected activities by attempting to criminally prosecute Ms. Bharucha individually, using the 29-day ordinance as an unlawful basis for the prosecution.

191. Defendant Greenwood Village retaliated against Plaintiffs ZHG and Bharucha for their protected activities by serving ZHG with an order to produce confidential records for use in a criminal prosecution, using the 29-day ordinance as an unlawful basis for the court order.

192. Defendant Greenwood Village's actions and inactions violated the Rehabilitation Act and its implementing regulations.

193. Defendant Greenwood Village had no legitimate basis for retaliating against Plaintiffs for their opposition to a discriminatory policy in violation of the Rehabilitation Act.

194. Defendant Greenwood Village's actions and inactions are the proximate and legal cause of Plaintiffs ZHG and Bharucha's injuries.

195. Plaintiffs ZHG and Bharucha have been and continue to be damaged by Defendant Greenwood Village's unlawful conduct under the Rehabilitation Act.

196. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

197. Plaintiffs are also entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future including

but not limited to striking down the 29-day ordinance or requiring Greenwood Village to grant exceptions to people with disabilities.

**SIXTH CLAIM FOR RELIEF**
**C.R.S. § 24-34-802**
**Violation of the Colorado Anti-Discrimination Act - Unlawful Discrimination**
*By All Plaintiffs Against Defendant Greenwood Village*

198. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

199. The Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-802, prohibits discrimination by public entities on the basis of disability. That section provides:

> An individual with a disability, as defined in section 24-34-301, must not, by reason of the individual's disability, be excluded from participation in or be denied the benefits of services, programs, or activities provided by . . . a public entity, as defined in section 24-34-301 … or be subjected to discrimination by any such . . . public entity. . ..

200. CADA defines a "public entity" to include any state or local government or any department, agency, special district, or other instrumentality of a state or local government. C.R.S. § 24-34-301(18). The municipality of Greenwood Village is a "public entity" within the meaning of CADA.

201. People with mental illness and certain addiction issues are "qualified individuals with disabilities" within the meaning of CADA. C.R.S. § 24-34-301(7) (incorporating by reference 42 U.S.C. § 12102 among other provisions).

202. People who are perceived has having disabilities are also protected under CADA. *Id.*

203. Plaintiffs are all individuals or entities that provide services to individuals with disabilities and as such have a relationship or association with such individuals.

204. Defendant Greenwood Village established an explicit policy of denying an exception to the 29-day ordinance to individuals including those with whom Plaintiffs are associated solely on the basis of disability (or perceived disability) while explicitly granting the exception to similarly situated non-disabled people.

205. In doing so, Defendant Greenwood Village engaged in intentional discrimination against people with disabilities including those with whom Plaintiffs are associated by denying them opportunities based on their disabilities.

206. Alternatively, or in addition, Defendant Greenwood Village's 29-day ordinance exception policy has a disparate impact on people with disabilities including those with whom Plaintiffs are associated.

207. Defendant Greenwood Village failed to reasonably accommodate individuals with disabilities including those with whom Plaintiffs are associated by refusing to grant the same accommodations that are granted to other similarly situated people without disabilities, such as corporate guests.

208. Defendant Greenwood Village's actions and inactions violated CADA.

209. In implementing and enforcing a discriminatory ordinance exception policy, Defendant Greenwood Village forced Plaintiffs ZHG and Bharucha to choose between participating in discriminatory acts or violating the ordinance.

210. Defendant Greenwood Village had no legitimate basis for imposing a discriminatory policy in violation of CADA.

211. Defendant Greenwood Village's actions and inactions are the proximate and legal cause of Plaintiffs' injuries.

212. Plaintiffs have been and continue to be damaged by Defendant Greenwood Village's unlawful conduct under CADA.

213. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

214. All Plaintiffs, including Plaintiff CEDP, are entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future due to Defendant Greenwood Village's discriminatory conduct including but not limited to striking down the 29-day ordinance or requiring Greenwood Village to grant exceptions to people with disabilities.

## SEVENTH CLAIM FOR RELIEF
## C.R.S. § 24-34-802
## Violation of the Colorado Anti-Discrimination Act – Retaliation
*By Plaintiffs ZHG and Bharucha Against Defendant Greenwood Village*

215. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

216. Plaintiffs ZHG and Bharucha consistently voiced their good-faith opposition to the 29-day ordinance and its interpretation and application by Defendant Greenwood Village as well as their belief that Plaintiffs' interpretation of the exception for families in crisis was lawful. This is a protected activity under CADA.

217. Plaintiffs ZHG and Bharucha requested reasonable accommodations for individuals with disabilities by requesting either an exception to the 29-day rule or that the existing "families in crisis" exception apply to the Motel's longer-term guests with disabilities on multiple occasions. This is a protected activity under CADA.

218. Plaintiffs ZHG and Bharucha refused to comply with Defendants' construction of the ordinance so as to avoid its discriminatory intent and impact. This is a protected activity under CADA.

219. Plaintiffs ZHG and Bharucha aided and encouraged individuals to exercise and enjoy their rights under CADA. This is a protected activity under CADA.

220. Defendant Greenwood Village retaliated against Plaintiffs ZHG and Bharucha for their protected activities by attempting to criminally prosecute Ms. Bharucha individually, using the 29-day ordinance as an unlawful basis for the prosecution.

221. Defendant Greenwood Village retaliated against Plaintiffs ZHG and Bharucha for their protected activities by serving ZHG with an order to produce confidential records for use in a criminal prosecution, using the 29-day ordinance as an unlawful basis for the court order.

222. Defendant Greenwood Village's actions and inactions violated CADA's prohibition against retaliation, coercion and intimidation.

223. Defendant Greenwood Village had no legitimate basis for retaliating against Plaintiffs for their opposition to a discriminatory policy in violation of CADA.

224. Defendant Greenwood Village's actions and inactions are the proximate and legal cause of Plaintiffs ZHG and Bharucha's injuries.

225. Plaintiffs ZHG and Bharucha have been and continue to be damaged by Defendant Greenwood Village's unlawful conduct under CADA.

226. Plaintiffs ZHG and Bharucha are entitled to damages as may be proven at trial.

227. Plaintiffs are also entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future due to Defendant Greenwood Village's retaliation, interference, coercion, and intimidation including but not limited to striking down the 29-day ordinance or requiring Greenwood Village to grant exceptions to people with disabilities.

## **EIGHTH CLAIM FOR RELIEF**
## **C.R.S. § 38-1-101(3)(a)**

**Violation of Colorado's Prohibition on Elimination of Non-Conforming Uses Statute**
*By Plaintiffs ZHG and Bharucha Against Defendant Greenwood Village*

228. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein.

229. Under Colorado state law, "a local government shall not enact or enforce an ordinance, resolution, or regulation that requires a nonconforming property use that was lawful at the time of its inception to be terminated or eliminated by amortization." C.R.S. § 38-1-101(3)(a).

230. Prior to the August 5, 2024 vote to amend the 29-day ordinance, Plaintiffs ZHG and Bharucha were consistently utilizing the lawful exception under the 2014 version of C.R.S. § 16-17-90(b)(1) to permit longer-term motel stays where "there is a written contract between the hotel or motel and a governmental, charitable or insurance agency to house families in crisis who are receiving temporary housing assistance from said governmental, charitable or insurance agency."

231. Prior to the August 5, 2024 vote to amend the 29-day ordinance, Plaintiffs ZHG and Bharucha were consistently utilizing the lawful exception under the 2014 version of C.R.S. § 16-17-90(b)(2) to permit longer-term motel stays where "there is a written contract between the hotel or motel for an on-site resident manager or employee to live at the hotel or motel."

232. The August 5, 2024 vote by Greenwood Village City Council to remove the exceptions under C.R.S. §§ 16-17-90(b)(1) and (2) constituted enactment of an ordinance that requires a nonconforming property use that was lawful at the time of its inception to be terminated.

233. Defendant Greenwood Village's actions in enacting the August 5, 2024 amendment to C.R.S. § 16-17-90 violated C.R.S. § 38-1-101(3)(a).

234. Plaintiffs ZHG and Bharucha, as property owners and operators, will suffer substantial harm if Defendant Greenwood Village is permitted to enforce this ordinance against them.

235. Plaintiffs are entitled to declaratory and injunctive relief as may be allowed to remedy the harm they have suffered, continue to suffer, and will suffer in the future due to Defendant Greenwood Village's termination of their lawful nonconforming use under C.R.S. §§ 16-17-90(b)(1) and (2).

**NINTH CLAIM FOR RELIEF**
**C.R.S. § 13-21-131 – Colo. Const. Art. II, Section 7 – Malicious Prosecution**
*By Plaintiff Bharucha Against Defendant Fanta*

236. Plaintiff hereby incorporates all previous paragraphs of this Complaint as if fully set forth herein.

237. At all times relevant to the subject matter of this Complaint, Defendant Fanta was acting under color of state law in his capacities as a Police Officer of the City of Greenwood Village and within the scope of his employment.

238. Defendant Fanta concealed or misrepresented the material fact that his criminal investigation was based on probable cause of a *crime* to the Municipal Court Judge, whose judgment was thereby influenced by these misstatements, and Defendant Fanta continued to conceal material facts throughout the period of time during which the charges against Ms. Bharucha were pending.

239. Defendant Fanta's misrepresentation that his investigation was based on probable cause of a *crime* thereby caused the Municipal Court to authorize an investigatory search of documents to aid an investigation against Ms. Bharucha and cause the continued prosecution of Ms. Bharucha.

240. Relying on Defendant Fanta's misrepresentations that he were pursuing a criminal prosecution against Ms. Bharucha, the Municipal Court permitted the prosecution to continue.

241. No probable cause supported Ms. Bharucha's original criminal summons or prosecution.

242. Defendant Fanta was motivated by a motive other than a motive to bring to justice a person thought to have committed a crime; namely, the purpose of intimidating Ms. Bharucha and the Motel into discontinuing their use of the 29-day ordinance exception for "families in crisis" to help people with disabilities in collaboration with non-profits and charitable organizations.

243. Defendant Fanta acted with malice in concealing or misrepresenting facts material to the charges against Ms. Bharucha and her continued prosecution.

244. Defendant Fanta made the above actions and omissions knowingly, maliciously, willfully and wantonly.

245. Defendant Fanta's conduct violated clearly established rights belonging to Ms. Bharucha of which a reasonable person in his position knew or should have known.

246. As a legal and proximate result of Defendant Fanta's actions or omissions described herein, Ms. Bharucha has suffered and continues to suffer humiliation, lost earnings, emotional distress, loss of enjoyment of life, and other significant injuries, damages and losses.

247. The charge against Ms. Bharucha resulting from the actions/omissions of Defendant described herein was dismissed; thus, the original action against Ms. Bharucha terminated in her favor.

248. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages because the actions of Defendant Fanta were taken

maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a. All appropriate relief at law and equity;

b. Declaratory relief;

c. Injunctive relief;

d. Actual economic damages as established at trial;

e. Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

f. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

g. Issuance of an Order mandating appropriate equitable relief;

h. Pre-judgment and post-judgment interest at the highest lawful rate;

i. Attorney's fees and costs; and

j. Such further relief as justice requires.

Dated: February 9, 2026.

Respectfully Submitted,

KILLMER LANE, LLP

*s/ David A. Lane*

David A. Lane
Madison Schaefer

1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dlane@killmerlane.com
mschaefer@killmerlane.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2026, a copy of the foregoing was served via email and via ICCES file and serve to the following:

Peter Doherty
LASATER AND MARTIN
5251 DTC Parkway, Suite 800
Greenwood Village, CO 80111
Phone: 303-730-3900
peter@lasaterandmartin.com
*Counsel for Defendants*

*s/ Jamie Akard*
Jamie Akard