IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:24-cv-02135-SKC-STV

NEZA BHARUCHA;
ZARRIN HOSPITALITY GROUP, INC.; and
COMMUNITY ECONOMIC DEFENSE PROJECT,

Plaintiffs,

v.

CITY OF GREENWOOD VILLAGE;
DETECTIVE TOM FANTA, in his individual capacity;
CITY ATTORNEY TONYA HAAS DAVIDSON, in her individual capacity; and
CITY MANAGER JOHN JACKSON, in his individual capacity,

Defendants.

---

**PLAINTIFF BHARUCHA'S RESPONSE TO DEFENDANT TOM FANTA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT [ECF 72]**

---

Plaintiff Neza Bharucha, by and through her attorneys David Lane, Madison Schaefer, and Katerina Morgan of KILLMER LANE LLP, hereby submits her Response to Defendant Tom Fanta's Motion to Dismiss Plaintiff's Second Amended Complaint and states as follows:

**Certification Regarding Use of Artificial Intelligence Pursuant to Judge Crews' Standing Order for Civil Cases § C (2)**

Undersigned counsel certifies that no portion of this Response was drafted by AI.

## I. INTRODUCTION

Defendant Tom Fanta is a Detective for the Greenwood Village Police Department, and he personally led the criminal investigation into Plaintiff Neza Bharucha that resulted in the filing of criminal charges against her under the city's "29-day ordinance." Second Amended Complaint ("SAC"), [ECF 66] at ⁋⁋ 69, 74-75. Defendant Fanta affirmatively "mark[ed] the summons as "criminal" and [] fraudulently select[ed] "M" for "misdemeanor" on the criminal custody report…" *Id.* at ⁋ 74. Defendant Fanta served Plaintiff with a criminal summons based on "the 29-day ordinance" which he knew "was a civil land-use ordinance which 'does not constitute a crime and the punishment imposed shall not be deemed for any purpose to be penal or criminal punishment.'" *Id. at* ⁋ 74 and ⁋ 69, citing to Greenwood Village municipal ordinance §16-1-80(c). "On August 29, 2023," … "Greenwood Village moved to dismiss its criminal prosecution against Ms. Bharucha based on the District Court Judge's ruling that the 29-day ordinance is plainly not a criminal statute." *Id*. at 79.

This ordinance prohibited hotel and motel guests from staying longer than 29 days, subject to a few exceptions including where "there is a written contract between the hotel or motel and a governmental, charitable or insurance agency to house families in crisis who are receiving temporary housing assistance." *Id.* at ⁋ 32. Plaintiff Bharucha contracted with charitable organizations to provide housing to people with disabilities subject to the ordinance exception. Defendant Fanta actively participated in a fraudulent criminal investigation against Plaintiff, which accrued 2,200 pages of discovery, to carry out Defendant Greenwood Village's discriminatory

interpretation of that exception to exclude people with "mental health and/or addiction issues." *Id.* at ¶¶ 54, 69-70, and 74.

Defendant Fanta's actions constitute malicious prosecution for (at least) two reasons: he served Ms. Bharucha with a *criminal* summons without probable cause despite the fact that the ordinance at issue is under the *civil* land use code; and he did not criminally investigate or charge any other motels with violations of the 29-day ordinance, even though many violated the ordinance on a regular basis with no applicable exception. *See id.* at ¶¶ 63, 71, 75-76. Both actions reveal Defendant Fanta's malicious intent to target and intimidate Plaintiffs and to deter their association with unhoused people with disabilities.

In his Motion to Dismiss, Defendant Fanta argues that 1) since Plaintiff was not subjected to a custodial seizure, as defined in federal jurisprudence on violation of Fourth Amendment claims under § 1983, then she is precluded from bringing a state claim of violation of Colo. Const. art. II, §7 under C.R.S. § 13-21-131, 2) that the fraudulent criminal summons was supported by probable cause for *a law violation* (just not a criminal law), and 3) that Plaintiff is time barred based on the statute of limitations running. Motion to Dismiss, [ECF 72], at 13.

First, the issue of how to interpret the legal term, seizure, as stated in the Colo. Const. art. II, §7 for the purpose of a malicious prosecution claim under C.R.S. § 13-21-131 is a question of first impression. Plaintiff argues that this Court should apply Justice Ginsburg's definition of "continuing seizure" stated in her concurrence in *Albright v. Oliver*, 510 U.S. 266 (1994), while Defendant suggests this Court

should adopt "custodial seizure" as set forth in *Albright*. Given there is no controlling law on this issue, if this question is the sole basis on which this Court's ruling turns, making it determinative, it would be appropriate to certify this Colorado state law question to the Colorado Supreme Court under C.A.R. 21.1. Second, while Plaintiff disputes that she was not in compliance with the civil ordinance, probable cause for a civil ordinance simply does not support probable cause for a criminal offense. There was no mistake – a criminal summons was authored by Defendant Fanta, served by Defendant Fanta, and filed with the court by Defendant Fanta. Lastly, Plaintiff's claim relates back and is not time barred. For all these reasons, Defendant Fanta's Motion to Dismiss should be denied.

## II. STANDARD OF REVIEW

To state a claim under Fed. R. Civ. P. 8(a), "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012) (citation omitted). Plausible does not mean likely to be true. *Robbins v. Okla ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). Specific facts are not necessary to state a claim for relief; the plaintiff "need only give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Khalik*, 671 F.3d at 1191. Plaintiff is not required to set forth "a prima facie case for each element" of the

claim to survive a motion to dismiss. *Sylvia v. Wisler,* 875 F.3d 1307, 1326 (10th Cir. 2017) (citation omitted).

In reviewing a motion to dismiss, the court must accept as true all the well-pleaded factual allegations in the Complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citation omitted). The court then must determine whether, viewing the allegations in the light most favorable to the plaintiff, the plaintiff has pleaded a plausible entitlement to relief. *Iqbal*, 556 U.S. at 679. "There is a strong presumption against dismissal for failure to state a claim." *Shell v. Am. Fam. Rights Ass'n*, 899 F.Supp.2d 1035, 1055 (D. Colo. 2012). When ruling on a motion under Fed. R. Civ. P. 12(b)(6), a court may not look beyond the contents of the complaint itself. *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002). "[I]f matters outside of the complaint are presented to and not excluded by the court, then the court should treat the motion as one for summary judgment under Rule 56 and not a motion to dismiss." *Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991); *see also Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999).Alternatively, rather than converting the motion to dismiss into a motion for summary judgment, a district court has discretion to decide the motion under Rule 12(b)(6) without considering the attached materials. *See Prager*, 180 F.3d at 1188.

## III. ARGUMENT

### A. PLAINTIFF HAS PROPERLY ALLEGED THE ELEMENTS OF A STATE MALICIOUS PROSECUTION CLAIM AGAINST DEFENDANT FANTA

Plaintiff's state law claim of malicious prosecution against Defendant Fanta is brought under C.R.S. § 13-21-131, the Enhancing Law Enforcement Integrity Act ("ELEIA"). This statute expressly states that the Colorado Governmental Immunity Act ("CGIA") does not apply to claims brought under this statute. C.R.S. § 13-21-131(2)(b). Defendant Fanta violated Plaintiff's rights under Colo. Const. art. II, § 7.

Colorado courts have just begun to apply the mechanics of a state claim for malicious prosecution under C.R.S. § 13-21-131. Drawing on common law, the Colorado Court of Appeals states the elements of a malicious prosecution claim are: "(1) the defendant contributed to bringing a civil or criminal proceeding against the plaintiff; (2) the proceeding was resolved in favor of the plaintiff; (3) there was no probable cause for the proceeding; (4) the defendant acted with malice; and (5) the plaintiff incurred damages." *Smith v. Idaho Springs Police Dep't*, 2023 Colo. App. LEXIS 2408, 2023 LX 12710 (unpublished) (citing to *Hewitt v. Rice*, 119 P.3d 541, 544 (Colo. App. 2004), *aff'd*, 154 P.3d 408 (Colo. 2007).

Plaintiff has pleaded sufficient facts to support each of these elements. Defendant argues that Plaintiff should be precluded from this cause of action based on the assumption that this Court will adopt a definition of seizure as "custodial seizure" as developed in the federal jurisprudence on § 1983 analysis of the Fourth Amendment when determining how to apply C. R. S. § 13-21-131 to Colo. Const. Article II, § 7. Additionally, Defendant Fanta alleges that Plaintiff has failed to plead that she was prosecuted without probable cause. *See* [Doc. 72] at 2, 11-13. Each of these arguments lack merit.

a. **<u>PLAINTIFF'S CLAIM IS PROPERLY GROUNDED IN HER RIGHTS UNDER COLO. CONST. ARTICLE II § 7.</u>**

This is a case of first impression for Colorado courts in the context of the ELEIA statute. Defendant wrongly assumes this Court will default to mirroring the rules developed for federal malicious prosecution claims where a Fourth Amendment violation requires a custodial seizure. Defendant cites no caselaw applying the term "custodial seizure" to the Colo. Const. Article II, § 7 for a Colorado state malicious prosecution claim, because there is none. Plaintiff argues that the legislative intent for the ELEIA Act calls for a broad reading of its legal terms in order to satisfy the spirit of it as a rights-expanding remedial statute. The application of "continuing seizure," as articulated by Justice Ginsburg's concurrence in *Albright*, to the Colo. Const. Article II, § 7 is the correct statutory interpretation to support the purpose of the ELEIA Act. Should the Court disagree, Plaintiff urges the Court to exercise its discretion and certify this question of state law to the Colorado Supreme Court under C.A.R. 21.1.

**i. The Legislative Intent of the Act was to Create a Rights-Expanding Remedial Statute**

In Colorado, statutory interpretation requires that courts "give effect both to the spirit and to the intent of the legislators in enacting the statute" which can be construed in part from legislative history. *Grant v. People*, 48 P.3d 543, 546-47 (Colo. 2002); *Young ex rel. C.Y. v. Brighton Sch. Dist. 27J*, 325 P.3d 571, 576 (Colo. 2014). Further, Colorado courts interpret comprehensive legislative schemes to give effect and meaning to all its parts and to further the General Assembly's intent. See *Pulsifer v. Pueblo Prof'l Contrs., Inc.*, 161 P.3d 656, 658 (Colo. 2007); *Wolford v.*

*Pinnacol Assurance,* 107 P.3d 947, 951 (Colo. 2005). Lastly, courts avoid interpretations that create absurdist results that contradict the statutory scheme. *Young ex rel. C.Y.*, 325 P.3d at 576.

Contrary to Defendants' argument that C.R.S. § 13-21-131 should be read against the background of federal case law interpreting 42 U.S.C. § 1983, the Act's legislative scheme makes clear that the cause of action created by C.R.S. § 13-21-131 was intended to be much broader than its federal counterpart, which has been severely judicially narrowed by many federal courts over the past several decades. Statutes such as Colorado's, which give vitality to state constitutional protections, provide rights independent of potentially similar rights arising from the federal constitution. "[U]nless expressly adopted by a state legislature authorizing civil actions to redress violation of state constitutions, the intent of the 1871 federal legislature that enacted Section 1983 is irrelevant to the construction of [a] state civil rights act." Gary S. Gildin, *Redressing Deprivations of Rights Secured by State Constitutions Outside the Shadow of the Supreme Court's Constitutional Remedies Jurisprudence*, 115 Penn St. L. Rev. 877, 904 (2011).

The ELEIA was passed amid state and nationwide protests, including massive demonstrations outside the state capitol in Denver, in response to the murder of George Floyd by Minneapolis police.[1] *Young ex rel. C.Y.*, 325 P.3d at 576..

1 *See, e.g.*, Russell Berman, *The State Where Protests Have Already Forced Major Police Reform*, THE ATLANTIC (July 17, 2020), https://www.theatlantic.com/politics/archive/2020/07/police-reform-law-colorado/614269/.

("Often the best guides to legislative intent are the context in which the statutory provisions appear and any accompanying statements of legislative policy, such as a legislative declaration."). The legislation implemented "[f]ar-reaching reforms to Colorado policing."[2] "The law contained a raft of changes that reformers have long sought, but the most significant provision is one that no state ha[d] successfully passed before, and the change that cops fear most: Police officers can now be sued, they can no longer claim 'qualified immunity' from civil damages if they knowingly violate the law on the job, and they could personally be on the hook for up to $25,000 in penalties stemming from a lawsuit."[3]

The ELEIA explicitly provides that "[s]tatutory immunities and statutory limitations on liability, damages, or attorney fees do not apply to claims brought pursuant to this section [13-12-131]"; the "'Colorado Governmental Immunity Act' [CGIA] …does not apply to claims brought pursuant to this section"; and "[q]ualified immunity is not a defense to liability." C.R.S. § 13-21-131(2). Further, "if [a] peace officer's employer determines that the officer did not act upon a good faith and reasonable belief that the action was lawful, then the peace officer is personally liable and shall not be indemnified by the peace officer's employer for five percent of the judgment or settlement or twenty-five thousand dollars, whichever is less." § 13-21-131(4). Based on the context in which it was enacted, its stated purpose to hold

---

2 Saja Hindi, *Here's what Colorado's police reform bill does*, THE DENVER POST (June 13, 2020), https://www.denverpost.com/2020/06/13/colorado-police-accountability-reform-bill/.

3 Berman, https://www.theatlantic.com/politics/archive/2020/07/police-reform-law-colorado/614269.

peace officers accountable for their unlawful conduct and increase law enforcement integrity, its explicit elimination of federally developed qualified immunity, CGIA immunity, and other limitations on liability, and its requirement that individual peace officers are personally financially liable for their violations, legislators intended that the ELEIA be far more broad-reaching and protective of individuals' rights than federal law under § 1983. *Young ex rel. C.Y.*, 325 P.3d at 576.

**ii. Definition of Continuing Seizure under a Rights Expansion Lens**

In Colorado, statutory interpretation requires that courts "give effect both to the spirit and to the intent of the legislators in enacting the statute." *Grant v. People*, 48 P.3d 543, 546-47 (Colo. 2002). Defendant expects this Court to mirror federal jurisprudence on § 1983 when constructing a definition of seizure under Colo. Const. art. II, § 7. However, a custodial seizure is far too narrow and would defeat the statutory purpose for which § 13-21-131 was enacted. *Id*. Rejecting state claims for malicious prosecution which lack a custodial seizure contradicts with the common law origins of malicious prosecution as a tort which does not require a custodial seizure. *Thompson v. Clark*, 596 U.S. 36, 51, (2022)(Alito, J., dissenting).

Plaintiff argues that this Court should adopt a broader theory of seizure under Colo. Con. Article II, Section 7 for malicious prosecution claims, as outlined by Justice Ginsburg in the U.S. Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). In that case, Justice Ginsberg urged the Court in a concurrence to adopt a non-custodial concept of a "continuing seizure" to address the control exercised by the state over defendants prior to a criminal trial. *Id.* at 278. She

argued that a seizure under the Fourth Amendment ought to include compelling a criminal defendant to "appear in court at the state's command," and also pointed out the harms to a defendant's employment prospects, reputational harm, and the financial and emotional distress of preparing a defense. *Id.*

In this case, Ms. Bharucha was not free to ignore the City's summons to appear in court, and she certainly suffered substantial emotional distress prior to that court appearance. She feared damage to her license to practice psychiatry as a result of a criminal charge or conviction. She was undoubtedly seized in the sense described by Justice Ginsberg in *Albright*, and this Court ought to recognize that interpretation of a malicious prosecution claim.

This Court should adopt a non-custodial definition of seizure as applied to a state claim for malicious prosecution under C.R.S. § 13-21-131 and Plaintiff's rights under Colo. Const. art. II, § 7. A broad reading of legal terms (here, seizure) is in line with the spirit of the Act as a rights-expanding remedial statute. *See supra,* footnotes 2-4; *Grant*, 48 P.3d at 546-47; *Young ex rel. C.Y.*, 325 P.3d at 576. Ensuring that there are viable remedies for rights violations and damages created by the blatant misuse of government authority over citizens is in line with the purpose of the Act. *Id*. A narrow reading of seizure as being limited to custodial seizure would create regressive results, effectively shutting the door on similarly situated plaintiffs across the state, which contradicts the legislative intent of the Act. *Id*.

**iii. If the Court's ruling turns on whether Plaintiff was seized pursuant to Colo. Const. art. II, § 7, this Court**

**should certify this novel question of state law to the Colo. Supreme Court.**

The Colorado Supreme Court has held that under C.A.R. 21.1(a) certification may occur where the state law question "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court." *Hamilton v. Amazon.com Servs. Ltd. Liab. Co.*, 2024 CO 60, ¶ 21, 555 P.3d 620, 625-26. Here, the issue of how to interpret Colo. Const. art. II, § 7, specifically the legal term, seizure, as an element in Plaintiff's state malicious prosecution claim is "determinative" as to the outcome of this Court's ruling on Defendant's motion to dismiss. *Id*. There is no controlling law, instead, the "statute is ambiguous" because "it is reasonably susceptible of multiple interpretations." *Godinez v. Williams*, 2024 CO 14, ¶ 20, 544 P.3d 1233, 1237. Further, "[c]ertification [would] allow[] [this Court] faced with a novel state-law question to put the question directly to the State's highest court, and has the advantages of reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response from the state court." *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir. 2008)(internal citations omitted). Lastly, "public policy" surrounding the implementation of the ELEIA Act weighs in favor of certification of this question. *Copier by & Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998).

b. **PLAINTIFF WAS PROSECUTED WITHOUT PROBABLE CAUSE**

Defendant claims that 1) there was probable cause for a non-criminal, civil, fine only municipal ordinance violation ("29-day ordinance") and 2) that it is

irrelevant to the malicious prosecution analysis that the charging documents were for a *criminal* municipal ordinance violation and included an advisement of criminal penalties. Defendant ignores the material differences between a civil summons and a criminal summons and requests this Court conflate the two when reviewing the sufficiency of the summons and affidavit. It would be an absurd interpretation of the law to find initiating fabricated criminal charges by citing to an underlying civil ordinance does not constitute "wrongful initiation of charges without probable cause." *Thompson v. Clark*, 596 U.S. 36, 43 (2022).

The Supreme Court has held that when determining whether a charge was initiated without probable cause to satisfy a claim of malicious prosecution, the plaintiff does "not have to show that *every* charge brought against [her] lacked an adequate basis." *Chiaverini v. City of Napoleon*, 602 U.S. 556, 557 (2024). A claim for malicious prosecution is not defeated when one or more of the total charges were initiated with respective probable cause, instead each charge is examined on an individual basis and one charge initiated without probable cause is enough. *Id.*

Applying that rule here – Plaintiff's claim is not defeated even if there may have been probable cause for a civil infraction of the 29-day ordinance, because there was indisputably no probable cause for a criminal infraction despite criminal proceedings being initiated against her. *Id.* Defendant cites to no criminal law that Plaintiff is alleged to have violated. This was an orchestrated effort to intimidate Plaintiff by maliciously prosecuting her for a crime that Defendant Fanta knew she had not committed, because it did not exist. Further, Defendant's affirmative

actions of including materially false information such as marking "M" for "misdemeanor" instead of selection "O" for "other" renders the summons deficient. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978). ("When the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a *truthful* showing; ... it is to be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true."); see also, *Davis v. City of Aurora*, Civil Action No. 1:24-cv-01081-RMR-KAS, 2025 U.S. Dist. LEXIS 275178, at *12-13 (D. Colo. July 1, 2025).

### B. THE STATE MALICIOUS PROSECUTION CLAIM IS NOT TIME BARRED BECAUSE IT RELATES BACK

Defendant argues that Plaintiff's proposed malicious prosecution claim is time barred. As Plaintiffs have laid out in their Motion to Amend, Plaintiff seeks leave to bring this claim against Defendant Fanta because she learned information about the defendant's mental state to support the "malice" prong of a malicious prosecution claim in Defendant Davidson's deposition on December 2, 2025. Plaintiff could not have known of this information prior to Defendant Davidson's deposition and therefore could not have properly pleaded malice prior to this deposition. *See Church of Scientology In'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001) (noting in the defamation context that "resolution of…actual malice inquiries typically requires discovery").

Defendants point out that Plaintiff could have brought these claims within the two-year statute of limitations if they had been filed on or before August 29, 2025. [ECF 72] at 15-16. Plaintiffs originally scheduled their first deposition of

Defendant John Jackson for June 20, 2025, and planned to schedule the other defendants for their depositions in short order. On that date, however, the Parties elected to engage in efforts to settle the case. Those settlement efforts continued through August of 2025, until it became apparent that settlement was not then possible, and Plaintiffs began to resume scheduling depositions. Plaintiffs would have learned the revelations discovered in Defendant Davidson's deposition (and potentially the depositions of other defendants) prior to the statute of limitations if not for settlement efforts – and Plaintiffs should not be punished for their part in making a good-faith effort at resolution.

Plaintiff's claims against Defendant Fanta do relate back to original date of filing. Because Defendant Fanta was previously a named defendant in this case for whom the sole claim against him was dismissed, Rule 15(c)(1)(B) regarding relation back of additional claims applies. Whether Rule 15(c)(1)(B) is satisfied "depends on the existence of a common core of operative facts uniting the original and newly asserted claims," *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (internal quotation marks omitted) (interpreting prior, but materially analogous, version of Federal Rule of Civil Procedure 15(c)). The claims clearly arise out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B). Indeed, Defendants' procedural history, which Defendant uses to argue that Plaintiffs somehow should have known the malicious mental state of Defendants at the time of filing, cuts against them on this point. *See* [Doc. 72] at 3-9. Because Defendant Fanta was previously a named defendant, this rule applies to him.

## IV. CONCLUSION

For the reasons set forth above, Defendant Fanta's Motion to Dismiss Plaintiff's Second Amended Complaint must be denied.

Respectfully submitted this 20th day of April, 2026.

Killmer Lane, LLP

*s/ David A. Lane*

______________________________

David A. Lane
Madison Schaefer
Katerina Morgan
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
(303) 571-1001 fax
dlane@killmerlane.com
mschaefer@killmerlane.com
kmorgan@killmerlane.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Peter H. Doherty
Lasater & Martin, P.C.
5251 DTC Parkway, Suite 800
Greenwood Village, CO 80111
Phone: 303-730-3900
peter@lasaterandmartin.com
*Counsel for Defendants*

Killmer Lane, LLP

*s/ Jamie Akard*

Jamie Akard